MYRA ALBAUGH COUMANS, PLAINTIFF, v. VERNON ALBAUGH, DEFENDANT.

Juvenile and Domestic Relations Court
Bergen County

Decided June 21, 1955.

*Mr. Charles Bertini* argued cause for defendant.

KOLE, J. J. D. R. C. A complaint under oath by Myra Albaugh Coumans, of 374 Adams Court, Ferndale, Michigan, charging defendant with non-support of his two minor chil-

dren, Susan Marie (born December 1, 1938) and Mary Elizabeth (born September 6, 1943), was referred to this court by the Circuit Court of the County of Oakland, Pontiac, Michigan, in accordance with the Reciprocal Support Act, *N. J. S.* 2A:4–30.1 to 30.23. The complaint also sought arrearages under a Missouri order of support, hereinafter referred to.

Hearings thereon were held on December 21, 1954, January 28, 1955, and finally on May 31, 1955, at which defendant appeared and testified, and was represented by his attorney, Charles Bertini, Esq. Pursuant to defendant's request plaintiff has submitted answers to defendant's interrogatories under oath.

Based on the foregoing, the court does hereby make the following findings:

1. This matter was to have been heard originally on November 23, 1954, but was adjourned until December 21, 1954.

2. The plaintiff and defendant were divorced, defendant having been adjudged the innocent party, by a decree of the Circuit Court of Madison County, Missouri (No. 1741) on January 21, 1946, which decree awarded plaintiff the sum of $75 per month for the support of the two minor children of the marriage, Susan (now age 16) and Mary (now age 11).

3. Subsequently, after due notice to defendant, who was residing outside of the State of Missouri, the said decree was modified by the Missouri court, on May 6, 1954, to provide for $150 per month for the support of the said children, said order of modification reciting that defendant herein then earned $916 per month. Defendant did not appear at said hearing, except by counsel. He failed to appear because of the then serious illness of one of the children of his present marriage.

4. Defendant thereafter never contested the aforesaid increase in the order of support before the courts of Missouri, but now claims before this court that the said increase failed properly to take into account his obligations and expenses, plaintiff's earnings, and the children's needs.

5. Notwithstanding said increase, defendant, until the entry of the temporary order of support entered in this court on January 28, 1955, paid only $80 per month to plaintiff for the support of said children.

6. The temporary order of this court of January 28, 1955 ordered him to pay $100 per month for such support until final hearing.

 7. Under the Reciprocal Support Act of this State, the extent of the duty of support is such as the defendant would be under pursuant to the laws of this State. *N. J. S.* 2*A*:4–30.7. But where there is a valid order of support entered in another state, absent special circumstances, the extent of the duty of support in this State will usually be that imposed by that order. This rule is predicated on principles of comity and the basic purpose of the reciprocal legislation. *Worthly v. Worthly,* 267 *P. 2d* 23 (*Cal. Sup. Ct.* 1954). *Cf. Woodhouse v. Woodhouse,* 17 *N. J.* 409 (1955).

██ 8. Defendant does not and cannot, under the circumstances, contest the validity of the order of the Missouri court. That court had jurisdiction to enter the order of $150 per month. If the order was excessive, or if defendant's counsel, at the hearing in the Missouri court, did not present all of the facts as to defendant's expenses and obligations or as to the children's needs or plaintiff's earnings, defendant's remedy is to the Missouri court for a modification of its order.

██ 9. At the time of the entry of the $150 per month order, both defendant and plaintiff had married other spouses. Defendant had, and still has, a new family in New Jersey. Unfortunately, however, his obligations to his new family cannot be considered in determining his duty to support the children of his first marriage. *Testut v. Testut,* 34 *N. J. Super.* 95 (*App. Div.* 1955).

10. Plaintiff earns $325 per month; defendant earns $916 per month.

11. Were there no existing order of support entered by the Missouri court, based on the evidence before me, and considering all of the factors which should guide the determination of the proper amount of support, see *Turi v. Turi,* 34

*N. J. Super.* 313 (*App. Div.* 1955), I would enter an order of $130 per month against defendant for the support of the two children. I am of the view that plaintiff's proofs as to the children's needs are somewhat high—a total of $49 per week. In any event, plaintiff is also not without obligation to support the children, and, by her own admission, she earns $75 per week. Under all of the circumstances, $130 per month should suffice.

12. But there is an existing Missouri order of $150 per month and, as stated, due respect must be given thereto by this court. It may well be, however, as defendant claims, that had defendant been present and testified at the hearing which occasioned the $150 order, the Missouri court may have entered an order for a lesser amount. But this is all in the realm of speculation.

13. I am impressed with defendant's sincerity and concern not only for the two children of his former marriage but also for those of his present marriage. Under all the circumstances, the court is willing to give the defendant a reasonable opportunity to endeavor to obtain a modification of the Missouri order before the Missouri court.

14. Accordingly, an order will be entered, effective as of the date the original hearing in this cause should have been held—November 23, 1954—ordering the defendant to pay $150 per month for the support of the two children, with credit for any monies paid for such support since November 23, 1954. But the defendant will not be deemed to have disobeyed such order if he pays $130 per month, commencing November 23, 1954, with credit for monies already paid since such date, provided that he shall, within five months from the date hereof, have applied for and obtained from the Missouri court a reduction in its order. If the Missouri court reduces its order, the order of this court will be modified to conform to that of the Missouri court. If the Missouri court refuses to reduce its order, or if, within five months from the date hereof defendant has not obtained a new order from that court, then the order of $150 per month will stand. If defendant needs additional time, on

proper application and showing that appropriate proceedings have been instituted by defendant, and diligently pursued, in Missouri, this court may extend the five months' period.

■ 15. No order may be made by this court at this time as to the arrearages due under the Missouri order. The proof thereof before me is inadequate to establish any definite amount. Moreover, there is no showing as to whether, under Missouri law, the Missouri order is subject to modification or revocation by the Missouri court with respect to support arrearages already accrued. If it is subject to such modification or revocation, it should not be enforced here either under the full faith and credit clause or, it appears, as a matter of comity. *Lea v. Lea,* 18 *N. J.* 1 (1955). For these reasons, until such proof is supplied, no order will be made concerning such arrearages. When defendant applies to the Missouri court for relief, he may also request relief as to the arrearages, or he or plaintiff may then ask that they be fixed and determined. When that is done, and that court's determination is presented to this court, or when proper proofs, as indicated above, are presented to this court, appropriate action may be taken here with respect to such arrearages, if any. *Lea v. Lea, supra.*