No. 18,278.

ROBERT SPROWEL RODGERS, IV, *v.* JANET UHL RODGERS.
(323 P. [2d] 892)

Decided February 3, 1958.  Rehearing denied April 21, 1958.

Mr. SHERMAN G. FINESILVER, for plaintiff in error.

Messrs. VAN CISE & VAN CISE, for defendant in error.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

THE parties appeared in the trial court in reverse order. We will refer to them as they appeared there or by name.

Mrs. Rodgers filed her complaint March 10, 1955, seeking a divorce, custody of two minor children, alimony, support for the children, division of property, attorney fees, court costs, and such other relief as to the court might seem meet and proper. Motion for temporary orders was filed at the same time. The cause was speedily "at issue" when on April 2 the defendant filed

his answer, denying the allegations in plaintiff's complaint and interposing a counter claim also for divorce, rights of visitation, individual personal property rights, and equitable division of jointly owned property. Plaintiff denied the allegations of defendant's counter claim.

There was a hearing on plaintiff's motion for temporary alimony, child support, court costs, and attorney fees on April 25. The court ordered defendant to pay to or for the benefit of plaintiff sums totaling $220 per month; ordered the sale of certain stocks and bonds, and ordered defendant to pay certain outstanding family obligations. On November 15, 1955, by agreement of the parties, the cause was heard as non-contested on plaintiff's complaint for divorce. Findings were in her favor and interlocutory decree was entered which provided that the plaintiff should have custody of the minor children until the further order of the court, with reasonable visitation rights to the defendant.

This interlocutory decree made no mention of alimony, support money, attorney fees, court costs, or division of property. On May 16, 1956 (exactly six months to the day) a final decree of divorce was entered by the court. Contained therein are the words: "* * * upon the terms and conditions contained in the Interlocutory Decree, or any modification or change thereof subsequently made by the Court." This final decree, it is to be noted, contained no reference to alimony, division of property, or related subjects, and there is no mention in the decree itself of any reservation of these questions for further consideration. Because of these omissions in the decree, the defendant is here on writ of error, challenging the validity of all orders of the trial court, admittedly entered after the final decree of divorce. He urges that the court was without jurisdiction to make these orders. He argues that the court having entered final decree without disposing of any of said matters and *without expressly reserving said ques-*

*tions for further consideration,* is without jurisdiction to consider them.

The arguments for reversal urged herein, while well documented and founded on a great body of law presented in the briefs, have no merit in view of the total record in this case. The plaintiff in error would have us look solely at the interlocutory decree and final decree as the sum total of the orders of the court. This, in view of his own conduct and the conduct of previous counsel for Mr. Rodgers *during the entire pendency of the action,* does not bring this case within any of the cited cases on this subject.

In addition to the entry of the interlocutory decree in this case, the record shows that on the same day in proceedings prior to hearing the non-contested testimony of Mrs. Rodgers concerning the issue of divorce, *counsel for both parties* asked the court to take evidence on "matters of permanent alimony, child support and division of property, attorney fees, court costs, and such other matters as might normally be coming up at the time after final decree." We quote Mr. Rodgers' counsel:

"\* \* \* That testimony on these matters be presented to Your Honor and that an order be requested of Your Honor based upon that testimony, such order to be effective *only* and *after* entry of a final decree; in other words that the testimony be presented now on the matters which normally could not be passed on by the Court until after final decree, but that an order be entered now effective on the date of the final decree."

To that request the Court said:

"The Court received a letter from Mr. Evans [counsel for Mr. Rodgers] the other day telling me you gentlemen wanted to proceed on that basis. I was thinking about it as I drove over this morning. It seems to me we are attempting a precedent here which is bad. The very theory of holding off property settlement until these

people cease to be husband and wife is to give them a chance and do everything we can to encourage them to go back together. * * *"

After further comment by the Court, expressing his concern that full opportunity be given the parties for reconciliation during the six months before the entry of the final decree, he concluded his remarks with the following statement:

"The more I think about it, the more I think it is bad practice and should not be encouraged because it defeats the spirit of the law. Let us leave these people alone as long as we can and maybe they will go back together."

Whereupon Mr. Evans, counsel for Mr. Rodgers, said:

"In view of the Court's suggestion, and I presume I am speaking for Mr. Van Cise, these matters could await the entry of a decree, if that unfortunate thing should occur."

■ The record shows that Mr. Van Cise did concur, and it is perfectly obvious from the conduct of counsel that from that moment on both parties agreed that the Court had *deferred* the determination of property settlement, permanent alimony, support money, and related topics until after the entry of final decree of divorce.

The record further shows that the hearing on the day the interlocutory decree was entered was divided into two parts. Mrs. Rodgers was first called to the stand to testify relating only to evidence in support of her complaint for divorce. Immediately upon the conclusion of that testimony both Mr. and Mrs. Rodgers gave testimony for the purpose of enabling the Court to enter temporary orders pending the six months period of the interlocutory decree and pending final determination of those issues. This was accomplished pursuant to a request made by Mr. Rodgers' counsel as follows:

"Would the Court, following the hearing on the interlocutory, hear testimony concerning the financial condition of the parties at present for the purpose of fixing

temporary support orders for the six months' period?

"The Court: Yes. That is perfectly proper.

\* \* \*

"Mr. Van Cise: It is our understanding then that this matter will proceed as a non-contested decree *without prejudice to the rights of either party on financial matters;* and then we will proceed to the matter of whether there should be change in the temporary order.

"Mr. Evans: That is right." (Emphasis supplied.)

The Court signed the interlocutory decree on the date of the hearing. The reason that the decree is silent on alimony, support money and related matters is that the Court decided "to study the matter for a few days." Almost two weeks after the entry of the interlocutory decree, the Court on November 29, 1955, entered its temporary findings and order and "concluded that the order heretofore entered herein, that the defendant pay to the plaintiff $100 in cash, pay the utility bills, and make the payment on the home, should stand."

On April 25, 1956, approximately twenty days prior to the entry of the final decree of divorce, a letter sent to the trial judge, confirming a telephone conversation of some previous date, states that the parties, through their counsel, *had agreed* "to ask that the hearing relating to a permanent order with respect to all matters in the subject case, including support payments and division of property, be held as soon as possible after the decree becomes final, which will be May 15, 1956."

Subsequently Mr. Evans, then counsel for Mr. Rodgers, withdrew his appearance, and present counsel who represents him in the proceedings here, entered his appearance of record by filing a letter with the Court on May 28, twelve days after the entry of the final decree of divorce. He advised the Court that he had been retained by the defendant and requested a date for a hearing to be set in which "all matters pertaining to a property settlement in the above cause can be determined by the Court." Another pertinent quote from the letter is:

"Mr. Edwin P. Van Cise, Esquire, attorney representing Mrs. Rodgers, joins me in the request for a hearing date. It appears that an *agreeable date* would be the latter part of June or the early party of July." (Emphasis supplied.)

The record shows that the hearing was set for September 22, 1956, at 9 A.M.

The hearing was held on September 22. Counsel for Mr. Rodgers appeared. The record shows that at no place during the hearing was there any objection raised to the Court proceeding with the hearing. After all the evidence was taken, in which the parties furnished the Court with all information on which an award for permanent alimony, division of property, etc., could be made, the Court, on September 26, made "Findings and Direction for Preparation of Decree" wherein the Court undertook to make findings as to the proper amount of permanent alimony, division of jointly owned property and the duty of defendant to maintain insurance, Blue Cross and Blue Shield for the protection of the children, etc. On January 28, 1957, four months after the Court had entered its findings and conclusions, Mr. Rodgers, without objecting in any way to the orders of the Court, filed a request for "interpretation of and/or additional information to the findings of the Court." It petitioned the Court to "apportion the payments ordered to be made between support money for the children and alimony for the wife; to instruct as to whether or not the marital residence should be financed in the sole name of the wife, plaintiff, and whether the defendant should be indemnified and saved harmless from liability under the present indebtedness and refinanced indebtedness; that the Court enumerate the payments and expenses for which the wife should be responsible out of the monthly payment to her, that is household payments, taxes, improvements, upkeep, medical and dental bills for herself and minor children; that the Court set forth whether the payments to the children should continue until they

are eighteen years old or twenty-one years old or until the child dies, marries or becomes self-sustaining; that the Court direct whether either party can take the children out of the state without the written approval of the other party." It concludes by asking for "such other relief and information as the Court may deem meet and proper" and states that he makes the request to the Court so that he can be "fully advised as to his legal rights and obligations in the premises and is necessary for full understanding by defendant of the Court's findings aforesaid."

For the first time on February 13, 1957, plaintiff in error filed his motion to vacate the order and findings of September 26, 1956. This motion was denied March 1, 1957. Motion for new trial was dispensed with, and it is the order of September 26, 1956, Mr. Rodgers seeks to nullify and have set aside in asking that the judgment of the Court be reversed.

■ It appears obvious from the entire record that it was intended at all times by both parties that the Court was to retain jurisdiction to consider finally their property rights and the question of permanent alimony and support money. The record is complete and amplified by counsel and the Court to show that neither party ever deviated from a course of action calculated to enlist the aid of the Court in settling their rights and obligations in and to property and related matters of payments for alimony and support money.

The facts then do not come within the law cited by counsel. For example, the case of *Spain v. Spain,* 177 Ia. 249, 158 N.W. 529, relied upon is easily distinguishable from this case in that Iowa law provided for only one decree, final on entry. Also the facts show the wife did not ask for alimony at the time of her decree, and it was not until years later that she came into Court and applied for it. An analysis of other cases indicates clearly that the wife, either expressly or by complete silence, waived her right to have the Court decide her alimony and prop-

erty rights and at some later date attempted to have the Court reopen the matter because of subsequent changed circumstances. In none of the cases is there an indication of an uninterrupted course of conduct prior to and immediately after the final decree in which both parties seek the aid of the Court in their financial matters.

■ It is obvious from the record that the reason that the interlocutory decree was silent as to the question of alimony and related matters is that the Court did not decide that until almost two weeks later. A decision on the issue was by express request of the parties through their counsel. The subsequent order was valid at the time entered and remained in full force and effect. If there is any magic to the entry of a formal final decree, which the Court is not required to do under Colorado law, prior orders of the Court were merged therein by the words which we find in the final decree, to-wit: "upon the terms and conditions contained in the interlocutory decree of any *modification or change* thereof *subsequently* made by the Court." (Emphasis supplied.) Most assuredly the orders entered by the Court containing the temporary orders are a modification and a change of the interlocutory decree entered two weeks previously thereto.

We also note the Court in its final decree for division of property and alimony, making reference to his previous temporary orders, cites in paragraph 6 of his findings:

"That in April of 1955 there was a hearing on alimony and support, and a finding and order that Plaintiff should receive from Defendant $100.00 per month in cash and in addition that Defendant should pay directly the payment on the house note and the bills for telephone, gas and light, and water; that in November of 1955 there was another hearing on the same matter, and the order thereon remained the same; that at the hearing September 22, 1956, all financial matters of the parties were presented to the Court; that the total in cash and

direct payments comes to approximately $225.00 to $235.00 per month. That in previous orders the payments were allocated between alimony and child support on a basis of 30% alimony and 35% support to each child that the allocation should be 50% alimony and 25% support to each child."

The Court further says in paragraph 3 of his order:

"That the previous orders of this Court pertaining to cash payment by Defendant directly to Plaintiff and payments by Defendant on house note, telephone, gas and light, and water bills shall continue in force and effect for the period prior to the first of the month following the signing of this order, and utility bills shall be apportioned between Plaintiff and Defendant, with Defendant to pay for the period up to said date and Plaintiff to pay for the period thereafter."

Consistent with the entire litigation, the Court ties its final orders to the temporary orders.

Concerning the necessity of the Court entering a final decree reiterating or summarizing or "tying-together" its previous orders including the interlocutory decree — no such order is necessary in Colorado. As stated in *Morris v. Propst*, 98 Colo. 213, 220, 55 P. (2d) 944:

"Certain it is that under the 1933 statute ('53 C.R.S. 46-1-10) no other decree of divorce is required to be entered than the interlocutory one which in a normal situation mechanically becomes final."

In *Hoffer v. Hoffer*, 120 Colo. 152, 153, 207 P. (2d) 1203, the Court said:

"Hence the 'final decree' of which defendant complains was but the formal announcement of a status already judicially obtained and for the purposes here properly may be disregarded."

As we have already stated, the final decree by the words quoted, supra, carried with it the changes and the modifications subsequent to the entry of the interlocutory decree of divorce.

The plaintiff in error has not asserted, nor do we of our own motion discover that the Court abused its discretion in dividing the property and making the alimony and support money awards.

Accordingly, the judgment is affirmed.

MR. JUSTICE KNAUSS and MR. JUSTICE HALL do not participate.