Virginia Norton SCHLECHT, Appellant,

v.

Richard William SCHLECHT, Appellee.

No. 10675.

District of Columbia Court of Appeals.

Submitted May 19, 1977.

Decided May 8, 1978.

John R. Risher, Jr., Corp. Counsel, Louis P. Robbins, Principal Deputy Corp. Counsel, Richard W. Barton, Deputy Corp. Counsel, and Leo N. Gorman, Asst. Corp. Counsel at the time the brief was filed, Washington, D.C., were on the brief for appellant. S. Perry Jones, Asst. Corp. Counsel, Washington, D.C., also entered an appearance for appellant.

John W. Karr, Washington, D.C., for appellee.

Before KERN and HARRIS, Associate Judges, and PAIR, Associate Judge, Retired.

KERN, Associate Judge:

This appeal presents for our determination the propriety of the trial court's refusal on jurisdictional grounds to entertain a petition for support first filed by appellant (the wife) in her place of residence, Maryland, and then certified and transmitted in accordance with the provisions of the Uniform Reciprocal Enforcement of Support Act (URESA)[1] to the Family Division of the Superior Court of the District of Columbia—the place of residence of appellee (the husband).

The parties to this appeal were divorced in Colorado in 1971. The Colorado court awarded custody of the two children to the wife and ordered the husband to pay each month to the wife both alimony and child support.[2] Each of the parties subsequently took up residence, separately, in Maryland. The wife then filed a petition in the Circuit Court of Anne Arundel County for the "Adoption of a Foreign Decree and Enforcement Thereof," *viz.,* the Colorado decree ordering the husband to pay alimony and child support. The Maryland court, after a hearing at which attorneys for both parties appeared, issued on June 8, 1972, a Memorandum Opinion and Decree which "adopted" the Colorado court's order and provided that commencing in July 1972, the husband's alimony and support payments should be made "through the [court's] Domestic Relations Division."[3] The husband later moved from Maryland to the District.

In October 1974, the wife filed in the same Maryland court a so-called URESA petition under Md.Ann.Code, art. 89C.[4] She alleged in her petition, among other things, that the husband has refused to make his child support and alimony payments since on or before January 1, 1974, and was $5,354 in arrears, and petitioned that the husband should henceforth pay her a total of $600 a month in alimony and child support.[5] The Maryland court, in accordance with the provisions of URESA, certified "that . . . the respondent [husband] should be compelled to answer such petition and be dealt with according to law," and transmitted to the Superior Court of the

1. D.C.Code 1973, § 30–301 *et seq.*

2. The husband was to pay $250 alimony monthly for one year and $100 per month thereafter; his support payments were $250 per child per month.

3. *The* court increased *the* husband's payments by 2% per month as an apparent service charge for receiving, recording and disbursing these payments.

4. D.C.Code 1973, § 30–301 *et seq.,* contains the URESA provisions applicable in the District which are identical to those contained in the Maryland Code.

5. The Colorado decree, adopted by the Maryland court, had directed him to pay $100 in alimony and $500 in child support each month. *See* note 2, *infra.*

District of Columbia the wife's petition and supporting papers, including its 1972 Opinion and Decree which had "adopted" the 1971 Colorado decree directing the husband to pay the wife alimony and support for their children.

The trial court here concluded in an opinion entered in 1976 that it was "without jurisdiction either to determine arrears or to enter judgment for any sums which petitioner [the wife] claims to be due [from the husband] under the Maryland court's order of June 8, 1972." The court, citing *Gamble v. Gamble,* D.C.App., 258 A.2d 261 (1969), opined that the Maryland court order of 1972 upon which the wife's URESA petition was based "is not entitled to full faith and credit because under the law of Maryland its order is subject to a retroactive modification or cancellation and therefore is not a final decree."[6] The court went on to order the husband to pay $400 per month for the support of the two children.

■ The wife on appeal challenges the trial court's refusal to entertain her URESA petition as it sought to enforce the husband's duty to support her and to collect arrearages in his payment of alimony and child support. She also contends that upon the evidence adduced at the hearing concerning the children's needs and the husband's ability to pay child support, the payment ordered by the trial court, *viz.,* $150 and $250 per month to the older and younger child, respectively, was insufficient. We reject the wife's challenge to the sufficiency of the amount the husband was ordered to pay monthly for the support of their children; the record in our view supports such award.

We turn now to the issue whether the trial court was correct in concluding upon the strength of *Gamble* that it lacked jurisdiction even to entertain the wife's URESA petition as it sought alimony from him and amounts he had allegedly failed in the past to pay for support of her and the children. We are of the view that *Gamble* is not applicable to the instant case. There, the plaintiff sought to obtain in the District full faith and credit for a prior Maryland judgment directing payment of alimony and child support. The action was *not* brought under URESA and the Maryland judgment was the only basis for such action. We reasoned that since by the law of Maryland its courts could at any time modify or cancel, even retroactively, orders of alimony and support, such an order had a "potentially fluid character" thereby rendering it unenforcible in this jurisdiction under the full faith and credit clause of the Constitution.

■ Here, in contrast, we deal with a URESA petition which Congress has deemed a remedy for obtaining support and alimony wholly separate from and additional to any other remedies[7] a wife may have to recover alimony and support. D.C.Code 1973, § 30–303. Indeed, the basis for a URESA petition is *not* a prior judgment, as was the case in *Gamble,* but rather the existence of a duty to support on the part of the respondent.[8]

The trial court appeared to advance an alternate ground for its refusal to entertain the wife's URESA petition. As we read the

---

6. This court in *Gamble* affirmed the trial court's refusal to give full faith and credit to a foreign judgment, *viz.,* a Maryland alimony and child support decree, because it deemed such decree not final since alimony and support decrees under Maryland law are subject to retroactive modification or cancellation.

7. We have pointed out one such remedy: "[A] 'money judgment' is available as a means of collecting . . . under a foreign decree for the support of a minor child." *Howze v. Howze,* D.C.App., 225 A.2d 477, 478 (1967); and "[t]he trial court is authorized to enforce a decree for alimony granted in another jurisdic-

tion." *Phelps v. Williams,* D.C.App., 192 A.2d 805, 806 (1963).

8. We have quoted with approval the following encapsulated description of the purpose of URESA:

The Uniform Reciprocal Enforcement of Support Law was intended to provide a simplified two-state procedure by which the obligor's duty to support an obligee residing in another state may be enforced expeditiously and with a minimum of expense to the obligee. [*Watson v. Dreadin,* D.C.App., 309 A.2d 493, 496 (1973).]

trial court's opinion, it reasoned that the 1972 Maryland decree merely "adopted" the 1971 Colorado decree ordering the husband to pay the wife alimony and child support. The court went back to that 1971 decree and noted that it had not been entered incident to a divorce because there were two separate and distinct orders entered by the Colorado court. The first, entered in August 1971, ordered the divorce of the parties; and the second, entered in December 1971, denominated a "permanent decree," ordered the husband to make monthly child support and alimony payments to the wife. The result, in the trial court's view, was that the parties were divorced by the Colorado court *before* it decreed a settlement of their joint property rights and obligations. Hence, from August 1971, the court apparently reasoned, the parties were no longer married and the husband accordingly had no obligation at any time from August 1971 to the date of the URESA petition in 1974 to support his ex-wife.

■■■ With all deference, we believe the trial court misread both Colorado law and the provisions of URESA. The Colorado court's dissolution of the parties' marriage in one decree, *i. e.,* August 1971, and its disposition of their marital interests in a subsequent decree, *i. e.,* December 1971, is a well-established procedure under Colorado law. Alimony awarded in a decree subsequent to the divorce decree is deemed by the Colorado courts to have been entered *incident to the divorce. Alexander v. Alexander,* 156 Colo. 85, 396 P.2d 966 (1964); *Rodgers v. Rodgers,* 137 Colo. 74, 323 P.2d 892 (1958). In addition, URESA expressly defines "a duty of support" to include "any duty of support imposed . . . by any court order . . . whether incidental to a proceeding for divorce . . . *or otherwise."* D.C.Code 1973, § 30–302(e)(1) (emphasis added).

In sum, we conclude the court should have entertained the wife's URESA petition because *Gamble* is not applicable and the husband had a duty to support the wife as that term is defined in URESA.

■■ We turn now to a determination of the responsibility of the trial court on remand. The wife, since noting this appeal, has remarried. She does *not* urge that she is entitled to any alimony from the husband from the date of her remarriage. In addition, one of the two children has, since the hearing before the trial court, reached 21 years of age and the wife concedes that the amount of child support presently required of the husband under the terms of the trial court's order, *viz.,* $400 monthly, is "reasonably approximate of the [remaining] child's needs." (Reply Brief at 2.)[9] Rather, the wife urges that on remand the trial court should determine (1) the amount of alimony to which she was entitled pursuant to the husband's duty to support her from (a) the date she filed her URESA petition in Maryland to (b) the date of her remarriage, and (2) the amount of arrearage, if any, in the husband's payments of alimony and child support at the time she filed her URESA petition.[10]

URESA fixes the responsibility of the court of the "responding state," the District of Columbia here, to determine the amount of the obligor's duty to support and, accordingly, the trial court on remand should determine the amount the husband should have paid the wife from the date she filed her URESA petition to the time of her remarriage.

As to any arrearage in the husband's alimony and child support payments at the time the wife filed her URESA petition, we note that the 1968 Model Act for URESA expressly provides that a duty of support "includes the duty to pay arrearages." *See*

---

**9.** The trial judge ordered the husband to continue a monthly child support payment of $400 until both children had reached 21 years of age.

**10.** The records of the Maryland court indicate the husband's payments to the wife were more current than she alleged in her URESA petition, but do reflect some arrearage.

9 U.L.A. § 2(b). The District of Columbia has never adopted this 1968 revision, however, and we find nothing in this jurisdiction's definition of the "duty of support" encompassing arrearages.[11] Accordingly, we are unable to extend the reach of URESA until the legislature takes action.

To summarize, we conclude that the trial court's order directing the husband to pay child support in the amount of $400 per month is correct upon the record before us and must stand. We further conclude that the court did have jurisdiction to entertain the wife's URESA petition against the husband as it sought enforcement of his duty to support her from the date she filed that petition until the date of her remarriage. The court should on remand determine the amount of alimony to which she was entitled each month.

Finally, we conclude the court correctly refused to entertain the wife's URESA petition as it sought to recover arrearages, if any, in the husband's payments to her of alimony and support ordered by the Colorado court in 1971 and adopted by the Maryland court in 1972.

The case is remanded for further proceedings in accordance with this opinion.

*So ordered.*

HARRIS, Associate Judge, concurring in part and dissenting in part:

I agree with the majority's basic holding that the trial court erred in concluding that it lacked authority to handle this proceeding under the Uniform Reciprocal Enforcement of Support Act as it has been adopted in the District of Columbia. Beyond that, I fear, my Brothers have sown seeds of confusion in a field which sorely needs the light of more comprehensive reasoning.

This is an area of the law which presents a considerable number of problems. *See, e. g.,* Note, *The Uniform Reciprocal Enforce-*ment of Support Act, 13 Stan.L.Rev. 901 (1961). It affects many people in a most critical way, *i. e.,* their very ability to survive economically. The importance of the issues presented by this case is illustrated by the vigor with which the Corporation Counsel of the District of Columbia has represented the interests of the dependent former wife and the remaining dependent child in this proceeding, asserting in part that a money judgment should have been entered for the arrearages which existed in payments of both alimony and child support.

The issues confronting us are complex and potentially far-reaching from a precedential standpoint. I express these views, albeit somewhat briefly, because of my inability to agree with the majority's disposition—or lack thereof—of significant aspects of this case.

I first state what I believe this court should do. In my opinion, we should hold that the trial court erred in failing to apply the provisions of URESA (as enacted in the District of Columbia), and remand the case for a proper application of those provisions in the normal course of the adversary process. That, in my view, should conclude our disposition of this controversy (or, at least, of this phase of it). Much of the majority opinion, however, unfortunately goes beyond such a disposition in a basically advisory fashion which bewilders rather than enlightens the reader. This leads me to my areas of concern with the majority opinion.

I start with the proposition that the original Colorado decree, as subsequently adopted by the Maryland court, constituted an unquestioned "duty of support" as defined by D.C.Code 1973, § 30–302(e). When appellant filed her URESA petition in Maryland, alleging that her former husband had moved to the District of Columbia and was delinquent in his support obligations, the proceeding properly was transferred to this

11. *But, cf.,* Brockelbank and Infausto, Interstate Enforcement of Family Support 139 (2d ed. 1971).

jurisdiction and docketed in the Superior Court pursuant to § 30–314(a). Then, once the Superior Court satisfied itself that there was a duty of support as defined by the Act, it was authorized under § 30–315 to "order the defendant to pay such amounts under such terms and conditions as the court may deem proper."[1]

I recognize that this court has stated that:

When [the URESA] petition was forwarded here, the responding court had to determine under our local statute whether [the obligor] owed a duty of support and, if so, the amount he should be required to pay for that purpose. [*Prager v. Smith*, D.C.App., 195 A.2d 257, 258–59 (1963) (footnote omitted).]

However, in *Prager v. Smith*, the District of Columbia trial court ordered the URESA defendant to pay the identical sum which the initiating New York court had directed him to pay. Hence, this court has not yet resolved definitively the question of what precise effect the support order of the initiating court has when the District of Columbia is the responding jurisdiction. That is an issue on which there is a split of authority. *Compare Craft v. Hertz*, 182 N.W.2d 293 (N.D.1970) (only originating jurisdiction may modify a support order); *Coumans v. Albaugh*, 36 N.J.Super. 308, 115 A.2d 641 (1955) (same) *and Freeland v. Freeland*, 313 S.W.2d 943 (Tex.Civ.App. 1958) (same) *with Swan v. Shelton*, 469 S.W.2d 943 (Mo.App.1971) (responding court may alter initiating court's support order); *Commonwealth ex rel. Byrne v. Byrne*, 212 Pa.Super. 566, 243 A.2d 196 (1968) (same) *and Davidson v. Davidson*, 66 Wash.2d 780, 405 P.2d 261 (1965) (same).

This question remains unanswered here, as the basic ruling by the majority is ambivalent. The majority reverses the trial court's rejection of URESA applicability, but only after it has affirmed the trial court's independently arrived at support decree. This, it seems to me, is an example of putting the cart before the horse. The majority thus seems to say that the proceeding should have been treated under the uniform support statutes, but that it matters little that it was not. Except, that is, for the matter of arrearages, which the majority concludes are not recoverable under the District of Columbia Act. I now turn to that aspect of the majority opinion, which I consider to be comparably ambivalent.

The majority correctly notes that § 2(b) of the 1968 Revised Model Uniform Reciprocal Enforcement of Support Act has not been legislatively adopted in this jurisdiction.[2] The first sentence of § 9 of the 1968 revised model act (both § 2(b) and § 9 refer to the duty to pay arrearages) provides that: "All duties of support, including the duty to pay arrearages, are enforceable by a proceeding under this Act including a proceeding for civil contempt." 9 U.L.A., Matrimonial, Family and Health Laws 805, 832 (1973). While that particular language is not present in our version of the Act, D.C.Code 1973, § 30–303 provides that: "The civil remedies herein provided are in addition to and not in substitution for any other remedies." Additionally, this court specifically has sanctioned the entry of a money judgment (albeit uncontested) for arrearages in a URESA proceeding. *Howze v. Howze*, D.C.App., 225 A.2d 477 (1967). Since the propriety of a judgment

1. Also of relevance (although not a model of clarity) is § 30–319 of the Code, which provides:

No order for support entered by the court in any proceeding arising under this chapter shall supersede any previous order of support entered in a divorce . . . action, or any other proceedings, but the amounts for a particular period paid pursuant to either order, when verified, shall be credited against

amounts accruing or accrued for the same period under both.

2. The majority does not mention the fact that no provision of the 1968 revised model act has been adopted here, 9 U.L.A., Matrimonial, Family and Health Laws 805 (1973), nor was any part of the earlier 1958 revised model act. Our uniform support legislation was enacted in 1957, based upon the original model act of 1950 as it had been amended in 1952. *Id.*, at 885.

for arrearages has been established in this jurisdiction, I attach no decisional significance to the fact that Congress did not specifically legislate the availability of a money judgment for arrearages as one of the available tools for the enforcement of a support obligation.[3] Thus, I would be considerably troubled if the majority here rejected flatly the appropriateness of a judgment for arrearages in any URESA proceeding.

Had the majority simply refused to sanction a judgment for all arrearages under URESA, such a position would have presented three obvious practical problems. First, it would be inconsistent with the basic objective of the overall statutory scheme, which is to permit the expeditious enforcement of a duty of support in another jurisdiction as simply as possible at a minimum cost.[4] Second, it would reward an obligor who leaves the original jurisdiction and thereafter defaults on his obligations. Third, it would promote otherwise avoidable litigation. There would be no incentive for even modest tolerance on the part of an obligee if an obligor, for the most understandable of reasons, should run somewhat behind in meeting his support obligations. If a delay which is tolerated should become as a matter of law a payment which is lost forever, then few obligees would tolerate any delay, but rather would hasten to their respective local courthouses to file URESA petitions.[5]

However, the majority does not rule out all arrearages as a remedy in this proceeding. Rather, it says that arrearages may be recovered from the date of the filing of the original URESA petition in Maryland. Thus, somehow a money judgment for arrearages is not proper for the full amount left unpaid by the obligor, but is proper for the amount unpaid after a URESA petition has been filed in the initiating jurisdiction. The majority cites no authority for its ruling on this point, which is not surprising. In my view, such a proposition is contrary to reason as well as being without any support in law.

I conclude by recognizing that an imperfect understanding on my part of the full significance of the majority opinion may be the underlying basis for my unwillingness to concur in other than its basic holding as to the applicability of URESA. Hopefully my fears are groundless, but I do feel obliged to disassociate myself from the other portions of the majority opinion.

---

3. In footnote 7 of the majority opinion, the entry of a money judgment for unpaid obligations is recognized as a potential remedy for one entitled to a duty of support. Nonetheless, the majority implicitly rejects that as a permissible course of action in this case.

The majority also concludes that the principle expressed in *Gamble v. Gamble*, D.C.App., 258 A.2d 261 (1969) (Maryland order subject to possible retroactive modification not entitled to full faith and credit) is inapplicable to a URESA proceeding. The majority does not discuss the significance (from the standpoint of *Gamble*) of a factor which may be highly relevant: the Maryland decree merely adopted a valid Colorado decree.

4. *See* footnote 8 of the majority opinion.

5. Perhaps the majority is of the unspoken view that the most appropriate way for an obligee such as our appellant to proceed would be to file a URESA petition in Maryland, have it transferred to the District of Columbia and processed without dispositive reference to arrearages, then return to Maryland to seek a money judgment for remaining arrearages, and then return to the District of Columbia to enforce the money judgment. If that represents the thrust of the majority's analysis, URESA would become less than a useless tool for an obligee, who would have to flit from court to court (often not as geographically convenient as Maryland and the District of Columbia); URESA would become a dramatically counterproductive statutory scheme. Surely, this was intended by no one.