**Stanley CYRUS, Appellant,**

v.

**Doreen MONDESIR, Appellee.**

No. 85–547.

District of Columbia Court of Appeals.

Submitted July 7, 1986.

Decided Oct. 7, 1986.

Florence R. King, Washington, D.C., was on the brief for appellant.

John H. Suda, Acting Corp. Counsel at the time the briefs were filed, with whom Charles L. Reischel, Deputy Corp. Counsel, and Michele Giuliani, Asst. Corp. Counsel, Washington, D.C., were on the brief, for appellee.

Before BELSON, TERRY and STEAD-MAN, Associate Judges.

BELSON, Associate Judge:

This case presents the question whether the trial court has the authority to award child support retroactively to the date a support petition was served upon a man ultimately adjudicated the father, where the child was born out of wedlock. We hold that the trial court can order such retroactive child support, and affirm.

Appellee Doreen Mondesir initiated a Uniform Reciprocal Support Action (URE-SA) in New York state by filing a petition on June 8, 1983.[1] The petition alleged that Mondesir and appellant Stanley Cyrus, a District of Columbia resident, had a sexual relationship from January 1970 to December 1976, resulting in the birth of a daughter on January 22, 1972. Mondesir reported a net weekly income of $185 as a computer operator, and estimated her daughter's needs to be about $300 per month, towards which appellant was voluntarily contributing $100 per month. In her affidavit, Mondesir stated that her daughter suffered from childhood autism. Appellee further averred that she was never married to appellant.

Mondesir's petition was forwarded to the District of Columbia Superior Court for additional URESA proceedings pursuant to D.C.Code §§ 30–314 and –315 (1981). Cyrus answered the petition for support on November 16, 1983. This was the first indication of record that Cyrus had been served with the petition.

Prior to the hearing on Mondesir's petition, Cyrus voluntarily submitted to the human leukocyte antigen (HLA) test. This

---

1. *See* N.Y.Dom.Rel.Law §§ 30–43 (McKinney 1977 & Supp.1986).

blood test established that there was a greater than 99% probability that Cyrus fathered Mondesir's daughter. At the hearing held by a judge in the Family Division on January 7, 1985, Cyrus conceded he was the father.[2] Accordingly, the court deemed the paternity issue closed and proceeded to conduct a support hearing.

During the support hearing, the trial court received into evidence a financial statement Mondesir submitted on February 15, 1984. This statement revealed that Mondesir had a second child (twenty-two months old), and that Mondesir had a gross monthly income of $2,250, including $300 per month in child support for her second child. Mondesir estimated the monthly expenses of her older child to be $596 per month.[3]

The trial court also heard evidence regarding Cyrus' ability to support his child. Cyrus admitted that during June 1983, the month the URESA petition was filed, he was earning about $24,000 yearly as an assistant professor of Spanish at Howard University. Furthermore, he acknowledged that he had made voluntary monthly child support payments of $100 until Mondesir filed the petition for support. Cyrus further stated that in December 1983, upon learning that his contract would not be renewed, he resigned his post at Howard University and began to travel around the world as a "free-lance speaker and a consultant in Latin American Studies and Afro-Hispanic matters." Cyrus submitted a financial statement on October 15, 1984, which indicated that his monthly expenses exceeded his monthly income by $205.[4] He acknowledged that he had not sought employment at an institution of higher learn-

ing since his departure from Howard University, and did not indicate any intention to do so in the future.

On January 17, 1985, the trial court entered an order requiring Cyrus to pay $100 per month in child support for the period from November 1983 (the time Cyrus was served with the petition) to January 15, 1985. The order set support for the period January 15, 1985, to April 15, 1985 at $150 per month, and directed Cyrus to use that three-month period to "arrange his finances and/or employment to meet his child support obligations." The order increased the support obligation to $300 per month beginning on April 15, 1985. It is from this order that Cyrus appeals.

■ Cyrus' first contention on appeal is that the trial court erred in awarding retroactive child support for the period between service of the support petition and the adjudication of paternity. Specifically, Cyrus maintains that there is no statutory or judicial authority for such a retroactive award. It is true that there is no express statutory authority or binding judicial precedent on the issue of retroactive support under the circumstances presented here. The relevant statutes are, however, broadly enough worded to warrant retroactive application, and we are not inclined to interpret them in a manner less favorable to children born out of wedlock than children born to married parents. For the reasons we discuss below, we are persuaded that in cases involving children born out of wedlock, trial judges in their discretion may award sup-

2. Cyrus contends on appeal that he never conceded the paternity issue at trial. This contention is flatly refuted by the hearing transcript. Moreover, appellant's brief states that "[i]t is appellant's position that ... he has an obligation to support the minor child."

3. The $596 per month figure equalled the sum of estimates made in a dozen categories in a column entitled "Children." A review of the form discloses, however, that Mondesir filled out the "Children" column with reference to the

older of her children, the child fathered by Cyrus. Expenses of appellee and her second child were estimated in the column entitled "Wife or Husband."

4. When called upon to explain this apparent deficit, appellant testified that he sometimes received in-kind assistance in the course of his travelling, and that some of the listed expenses were not in fact actually incurred.

port retroactive at least to the time a support petition is served.[5]

By statute, the parents of a child born out of wedlock owe a duty "to support such child while such child is a minor," D.C.Code § 30–320 (1981), *see also* § 16–916(c), as do parents of children born in wedlock, D.C. Code § 16–916(a) (1981). Each child, regardless of the circumstances of birth, "is the legitimate child of its father and mother." D.C.Code § 16–908 (1981). Taken together, these statutory provisions reflect an intent to treat children born out of wedlock the same as children born in wedlock.

Where the parents of children born in wedlock are involved, there is clear statutory authority for a trial court to require such parents to provide child support pendente lite prior to the entry of a permanent order of support, D.C.Code § 16–916(a). In contrast, D.C.Code § 16–916(c) (1981), which applies to all children, and D.C.Code § 30–315 (1981), which governs URESA claims, do not provide for pendente lite child support.[6] While this difference may flow rationally from the presumption of paternity which operates in the case of a child born in wedlock, it heightens the importance of how we interpret D.C.Code § 16–916(c) with respect to the award of retroactive child support. In addition, the manner in which we interpret D.C.Code § 16–916(c) may determine whether retroactive child support payments are permissible under D.C.Code § 30–315 (URESA). Under D.C.Code § 30–304 (1981), the extent of a duty of support in a URESA case is defined by the laws of the state where the defendant, here Cyrus, was present when the failure to support commenced or continued, or by the laws of the jurisdiction in which the dependent was present when the failure to support commenced or continued.

Absent an interpretation permitting retroactive child support awards, trial courts will be powerless to assure that a child born out of wedlock recovers support from a man ultimately adjudicated to be the child's father during any part of the time when paternity was, at least judicially, undetermined. It is obvious, therefore, that an interpretation of D.C.Code § 16–916(c) precluding a retroactive award would cre-

---

**5.** The period prior to service on the putative father is not in issue in this case. This court has previously held in a URESA case that the custodial spouse is entitled to receive child support dating back to the filing of the URESA petition in the initiating state, but is not entitled to receive arrearages for the period before that date. *Schlecht v. Schlecht*, 387 A.2d 575, 578–79 (D.C.1978). Our holding there, however, is not controlling here since the opinion in *Schlecht*, without expressly stating it, clearly indicates that the children involved were children of the marriage by its use of such terms as "husband," "wife," and "children." *Id.* at 577. This case, of course, involves a child born out of wedlock whose paternity had not previously been adjudicated. Although *Schlecht* is therefore not controlling, our holding here is entirely consistent with it.

**6.** The relevant statutory provisions read as follows:

Whenever a husband or wife shall fail or refuse to maintain his or her needy spouse, minor children, or both, although able to do so, or whenever any parent shall fail or refuse to maintain his or her children by a marriage since dissolved, although able to do so, the court, upon proper application and upon a showing of genuine need of a spouse may decree, pendente lite and permanently, that such husband or wife shall pay reasonable sums periodically for the support of such needy spouse and of the children, or such children, as the case may be, and the court may decree that he or she pay suit money, including counsel fees, pendente lite and permanently, to enable plaintiff to conduct the case. D.C.Code § 16–916(a) (1981).

Whenever any father or mother shall fail to maintain his or her minor child or children, the court may decree that he or she shall pay reasonable sums periodically for the support and maintenance of his or her child or children, and the court may decree that the father or mother pay court costs, including counsel fees, to enable plaintiff, to conduct the cases. D.C.Code § 16–916(c) (1981).

If the Court finds a duty of support as defined by this chapter it may order the defendant to pay such amounts under such terms and conditions as the Court may deem proper. The Court may require the defendant to furnish recognizance in the form of cash deposit or bond, and may punish a defendant who violates any order of the Court to the same extent as is provided by law for contempt in any other suit or proceeding cognizable by the Court. D.C.Code § 30–315 (1981).

ate an incentive for men to avoid their child support obligations for some period of time by delaying the process of adjudicating paternity.[7] The creation of such an incentive would, of course, run counter to the statutory purpose of providing for the needs of children without regard to circumstances of birth.

We also observe that the prospect of a retroactive award may allow a mother to use more of her own resources to care for her child during paternity proceedings, with the expectation of replenishing the resources available for her child by way of a retroactive award. On the other hand, the unavailability of a retroactive award would unduly burden a mother who would have to bear alone the financial burden of supporting a child during the period before the entry of an order granting support. The public's interest in minimizing the drain on the public fisc is also served by permitting retroactive awards because, in some cases at least, the District of Columbia could seek reimbursement for child support expenses it incurred during paternity proceedings. *See* D.C.Code § 30-305 (1981).

In addition to these policy matters, constitutional considerations favor interpreting D.C.Code § 16-916(c) to permit retroactive child support awards. Although there is no Supreme Court case directly on point, the Court gave a clear signal in *Pickett v. Brown*, 462 U.S. 1, 103 S.Ct. 2199, 76 L.Ed.2d 372 (1983), that statutes discriminating against children born out of wedlock would be subject to heightened scrutiny.

See *id.* at 7-18, 103 S.Ct. at 2203-09 (striking down two year statute of limitations for filing child support claims on behalf of children born out of wedlock). Relying in part on *Pickett*, we held in *District of Columbia ex rel. W.J.D. v. E.M.*, 467 A.2d 457, 459, 461-63 (D.C.1983), that the District of Columbia statute that provided a similar period of limitations was unconstitutional. The District of Columbia Council subsequently amended the statute to place children born out of wedlock on an equal footing with other children. D.C.Code § 16-2342 (1985 Supp.). Where, as here, it is possible to construe a statute to avoid doubts about its constitutionality, we will do so. *Konecny v. District of Columbia*, 447 A.2d 31, 36 (D.C.1982).

In view of the foregoing, we hold that D.C.Code § 16-916(c) and, consequently, D.C.Code § 30-315 (URESA), authorize the award of child support retroactive at least to the date the support petition was served on the putative father in cases involving a child born out of wedlock.[8]

■ Appellant's second contention on appeal is that the trial court abused its discretion in awarding $100 per month in child support for the fourteen months preceding the support hearing and in setting child support at a $300 per month rate beginning three months after the hearing. The gravamen of appellant's argument is that the size of the award was unreasonably high. A non-custodial parent's ability to pay must be taken into account in setting the level of child support due from that parent. *Benvenuto v. Benvenuto*, 389 A.2d 795, 800 n.

---

7. In *Trezevant v. Trezevant*, 403 A.2d 1134, 1137-38 (D.C.1979), we held that an increased level of support could be ordered effective retroactively to the time a petition for such increase was filed. A key reason why we arrived at this conclusion was our unwillingness to create an incentive for delay in assuming increased child support obligations. *Id.* at 1137.

8. We note that virtually the same question was considered in the context of a non-URESA case involving a child born out of wedlock in *District of Columbia ex rel. M.E.S. v. S.E.B.*, 113 Daily Wash.L.Rptr. 1437 (D.C.Super.Ct. June 4, 1985). Judge Weisberg, in a thoughtful opinion consid-

ering many of the factors discussed here, arrived at the conclusion that payments can be ordered retroactive to the date of service of the petition for support. The case before us does not raise the question of the trial court's authority to order payments for the period between the filing of the petition and its service on the putative father, where the child in question was born out of wedlock, and we express no view on that issue. *Schlecht, supra,* makes it clear that payment may be awarded in a URESA case retroactive to the date of the filing of the petition, where the child was born in wedlock.

4 (D.C.1978). The trial court found that appellant was "capable of earning a great deal more than that listed on his current financial statement" and that "he has chosen not to maximize his earning potential." Given appellant's admission that he had earned $24,000 per year before leaving Howard University in 1983, and had not pursued such remunerative employment thereafter, we perceive no reason to disturb the trial court's finding that appellant's ability to pay far exceeded what his financial statement indicated. Nor do we perceive an abuse of discretion in the trial court's ultimate resolution of the matter.[9] As is required for the exercise of discretion in this sensitive area, the court made its decision after a weighing of the child's needs and the parents' abilities to pay. *See Benvenuto, supra,* 389 A.2d at 798.

*Affirmed.*

---

**9.** Cyrus also complains that the $100 per month due for the November 1983 to January 15, 1985, period constitutes an excessive financial burden to pay off all at once. We find no abuse of discretion. We observe that, had appellant continued to make voluntary payments of $100 per month throughout the pendency of paternity proceedings, he presumably would not have had to pay a lump sum at all. This chain of events illustrates the soundness of an announced policy that permits trial courts to award retroactive child support in order to encourage voluntary support payments pendente lite.