# ROY LEO ANGELL *v.* LINDA JOAN JUST

[No. 610, September Term, 1973.]

*Decided July 12, 1974.*

The cause was submitted on briefs to ORTH, C. J., and POWERS and DAVIDSON, JJ.

Submitted by *Edwin F. Nikirk, II, Leroy W. Preston, John Wheeler Glenn* and *O'Connor, Preston & Glenn, P.A.* for appellant.

Submitted by *Francis B. Burch, Attorney General, David B. Allen, Assistant Attorney General, Robert S. Rothenhoefer, State's Attorney for Frederick County,* and *Lawrence A. Dorsey, Jr., Deputy State's Attorney for Frederick County,* for appellee.

DAVIDSON, J., delivered the opinion of the Court.

On 9 April 1973 in the Circuit Court for Frederick County, Mrs. Linda Joan Just, the appellee, filed a petition for a determination of paternity and support. The petition and affidavit attached thereto alleged, among other things, that Mrs. Just and the appellant, Roy Leo Angell, although not married to each other, had engaged in sexual relations beginning in the fall of 1961 or 1962 and continuing until 8 October 1971. The petition further alleged that as a result of such sexual intercourse a male child, Matthew Evers Just, was born on 10 July 1972. In his answer, appellant denied these allegations.

On 21 June 1973 a trial was held before Judge Samuel W. Barrick, sitting without a jury. There was evidence to show that Mrs. Just and Mr. Angell met each other in 1961 or 1962 and that during those years they had engaged in sexual relations. In 1964 Mrs. Just married someone other than Mr. Angell. She was divorced in 1967. She is the mother of two children other than the child alleged to be that of the parties. In 1967 Mr. Angell married someone other than Mrs. Just. He is the father of two children born of that marriage.

Mrs. Just testified that between 1962 and 8 October 1971, the parties did not engage in sexual relations, except for one isolated episode in 1967. According to Mrs. Just, on 8 October 1971 she left her house at about 9 p.m. She was "riding around" in her car and Mr. Angell was also "riding around" in his dark green Chevrolet pickup truck. Each of the parties was alone. Mr. Angell followed Mrs. Just "up to the dam." According to Mrs. Just, they met between 11 and 12 p.m. and shortly after midnight had intercourse on the seat of Mr. Angell's truck.

Mr. Angell denied that he had had sexual relations with Mrs. Just at any time since 1963. He conceded that he owned a pickup truck on 8 October 1971, but denied that he had ever met Mrs. Just while in the pickup truck or had had intercourse with her there. He stated that on 8 October 1971 he was with his wife at the Charles Town Race Course. They returned home between 11:30 p.m. and 11:45 p.m. and went to bed about 12:30 a.m. Mrs. Angell generally corroborated the testimony of her husband, explained that she and her husband shared the same bed and emphasized that her husband did not leave home after they returned from the races. The chancellor, after hearing all of the evidence,[1] found Mrs. Just to be a credible witness and held that Mr.

---

1. In addition to the evidence summarized above, a medical doctor testified that the estimated date of conception was between September 20 and October 10, 1971. On direct examination, Mrs. Just denied having intercourse with anyone other than Mr. Angell during the months of August, September, and October, 1971, although on cross-examination she conceded that she had had intercourse with one Edward Miller once during the first week of September. Mr. Carolton Lee Brice testified that he was in Mrs. Just's apartment some time between 5 and 8 October 1971, and had sexual intercourse with her there.

Angell was the father of the child. On 22 June 1973 Judge Barrick entered an order declaring Roy Leo Angell to be the father of the child and reserving judgment on the amount of support payments to be paid.

On 11 July 1973 Mr. Angell petitioned the court for a rehearing. The petition, sworn to by appellant, alleged, among other things, that prior to the trial appellant had no knowledge that appellee would testify that on 8 October 1971 the parties had had intercourse in Mr. Angell's pickup truck; and that after the hearing appellant had discovered that between 4 and 12 October 1971 his pickup truck had been in the possession of Kenneth Keeney operator of Thurmont Citgo, for the purpose of repairs. Attached to the petition was an affidavit, sworn to by Mr. Kenneth Keeney, stating that on 4 October 1971 he had towed Mr. Angell's 1966 Chevrolet pickup truck from Emmitsburg to his Citgo Station in Thurmont, and that between 4 and 12 October 1971 Mr. Angell's truck had been at his place of business for repairs. Also attached was a copy of an invoice for repairs, signed by Mr. Keeney and indicating that on 4 October 1971 Mr. Angell's 1966 Chevrolet half-ton truck had been towed from Emmitsburg to the Citgo Station in Thurmont; that on 9 October 1971 a payment of $100.00 was received; that the balance of the bill was to be paid when the truck was picked up; and that the balance was paid on 12 October 1971.

During the hearing on the motion, the chancellor found that the proffered evidence relied upon constituted impeachment on a collateral matter and did not therefore constitute an adequate basis upon which to grant a motion for rehearing.[2] The motion for rehearing was denied.

---

2. During a colloquy with appellant's counsel on the question of the proffered evidence relating to the truck, the chancellor said:

"Actually it's a collateral matter, whether intercourse took place in a pickup truck or a house or car or whatever."

After counsel had concluded their arguments on the motion, the chancellor said:

"As to the first point, as far as the truck being in the shop at the time of the alleged intercourse, I feel that that would be evidence merely to impeach the prosecuting witness and therefore that it is not grounds for a motion for a rehearing."

Testimony concerning the amount of support payments was then adduced.[3] After the chancellor decided that Mr. Angell could afford to make support payments, the parties compromised on the amount of $10 per week. On 7 August 1973 an order was entered denying the motion for rehearing and requiring appellant to pay $10 per week for child support. On 28 August 1973 this appeal was noted.

It is well settled in Maryland that the grant or refusal of a rehearing lies within the sound discretion of the trial court. *S & G Realty v. Woodmoor Realty,* 255 Md. 684, 690, 259 A. 2d 281, 284 (1969); *Lancaster v. Gardiner,* 225 Md. 260, 269, 170 A. 2d 181, 185 (1961); *Hancock v. Stull,* 199 Md. 434, 437, 86 A. 2d 734, 735 (1952); *Bailey v. Bailey,* 186 Md. 76, 81, 46 A. 2d 275, 277 (1946). The action of the trial court upon such motion will not be disturbed on appeal except under the most compelling and extraordinary circumstances. *A.S. Abell Co. v. Skeen,* 265 Md. 53, 59, 288 A. 2d 596, 599 (1972); *Carlile v. Two Guys,* 264 Md. 475, 477, 287 A. 2d 31, 33 (1972); *Butler v. State,* 19 Md. App. 601, 613, 313 A. 2d 554, 560 (1974); *Jones v. State,* 16 Md. App. 472, 477, 298 A. 2d 483, 486, *cert. denied,* 268 Md. 750 (1973). We believe there are compelling circumstances in this case which justify a finding that the trial court abused its discretion.

The trial court denied the rehearing because it found the proffered evidence to be "merely impeaching" on a "collateral" matter. We do not agree. In *McCormick's Handbook of the Law of Evidence* (2d ed. 1972), in § 47, entitled "Impeachment by 'Contradiction': Disproving the Facts Testified to by the First Witness," the rule that a witness may not be impeached by producing extrinsic evidence of "collateral" facts to "contradict" a previous witness's assertions about those facts is considered. In determining what is to be regarded as within the "protean word of art, 'collateral,'" McCormick says:

"The inquiry is best answered by determining what

---

3. The record shows that in 1972 Mr. Angell's gross income was close to $4,000 and his taxable income was about $3,000. At the time of the hearing, Mr. Angell's 1973 income was paralleling his 1972 income.

facts are not within the term, and thus finding the escapes from the prohibition against contradicting upon collateral facts.

\* \* \*

\* \* \*

"Finally, a third kind of fact must be considered. Suppose a witness has told a story of a transaction crucial to the controversy. To prove him wrong in some trivial detail of time, place or circumstance is 'collateral.' But to prove untrue some fact recited by the witness that if he were really there and saw what he claims to have seen, he could not have been mistaken about, is a convincing kind of impeachment that the courts must make place for, although the contradiction evidence is otherwise inadmissible because it is collateral under the tests mentioned above. To disprove such a fact is to pull out the linchpin of the story. So we may recognize this third type of allowable contradiction, namely, the contradiction of any part of the witness's account of the background and circumstances of a material transaction, which as a matter of human experience he would not have been mistaken about if his story were true. This test is of necessity a vague one because it must meet an indefinite variety of situations, and consequently in its application a reasonable latitude of discretionary judgment must be accorded to the trial judge." (Footnotes omitted.) *Id.* at 98-99.

While this analysis is made in the context of determining what constitutes collateral facts upon which a witness may not be impeached by extrinsic evidence, we find it equally useful in determining what constitutes collateral or material evidence upon which a new trial may be granted.

We believe that the evidence proffered here relates to material facts which are inextricably interrelated with the material issue in this case, whether the parties did in fact

engage in an act of intercourse which resulted in the birth of the child whose paternity is being determined. Mrs. Just testified that on 8 October 1971 she had sexual relations with Mr. Angell on the seat of his dark green Chevrolet pickup truck. Had she been uncertain as to the date or the ownership and description of the truck the proffered evidence might well have involved "collateral" matters, since it would not necessarily have rebutted the inference that intercourse between the parties might have occurred at some other time in some other truck. But here the record shows that Mrs. Just repeatedly and persistently maintained, on both direct and cross-examination, that the alleged act of intercourse took place on 8 October 1971, a date about which she could not have been mistaken because it was her birthday, and that it took place on the seat of Mr. Angell's Chevrolet truck, a locale about which she could not have been mistaken, given her long acquaintance with Mr. Angell and her ample opportunity for observation. By her own unequivocal testimony, Mrs. Just eliminated the possibility that the alleged act of intercourse took place on a date other than 8 October 1971 in a truck other than the Chevrolet owned by Mr. Angell. Mr. Angell proffered evidence which, if true, proves that on 8 October 1971 he did not have possession or control of his truck. Because of the certitude of Mrs. Just's testimony, the evidence proffered by Mr. Angell, if believed, serves not only to refute her testimony concerning the locale of the alleged act of intercourse but also to show that her whole story, including the alleged act of intercourse itself, was untrue. It is for this reason that we are convinced that the proffered evidence is material and not collateral.

Nor do we agree that the proffered evidence concerning the possession and control of Mr. Angell's truck on 8 October 1971 is "merely impeaching." It is well settled that a new trial will not be granted upon a ground of newly discovered evidence "where it appears that such evidence can have no effect other than to discredit the testimony of a witness at the original trial, contradict the witness's statements, or impeach a witness, *unless the testimony of the witness who*

*was sought to be impeached was so important to the issue
and the evidence impeaching the witness so strong and
convincing that a different result would necessarily follow
were a new trial granted."* (Emphasis added.) 58 *Am. Jur. 2d
New Trial* §§ 173-74 (1971), and cases cited therein.
Although no Maryland case has explicitly so held, an
analysis of Maryland cases relating to the use of impeaching
evidence as the basis for a new trial indicates that the same
rule applies here.

Thus, newly discovered evidence which alleges a conflict
of interest on the part of a witness testifying at the original
trial, does not constitute a proper basis upon which to grant
a new trial. *Gott v. Carr,* 6 G. & J. 309 (1834). Such evidence,
while it casts doubt upon the credibility of the witness, does
not show either a state of facts different from that to which
the witness testified, or that the state of facts to which the
witness testified did not in fact exist. It is not, therefore, so
strong and convincing as to necessitate a different result.
Similarly, newly discovered evidence which contradicts
allegedly perjured testimony given by a witness at the
original trial does not constitute a proper basis upon which
to grant a new trial where the allegedly perjured testimony
was not relied upon by the court in reaching its
determination. *Wilmer v. Placide,* 127 Md. 339, 343, 96 A.
621, 623 (1916). Such evidence does not compel the grant of a
new trial even though it might have established facts
different from those to which the witness testified, or
negated the existence of facts described by the witness,
because the testimony of the witness sought to be impeached
was not so important to the issues as to necessitate a
different result in the event that the testimony was
disbelieved.

However, newly discovered evidence which directly
contradicts material facts testified to by a witness at the
original trial and which, if believed, would probably require
a different result, does constitute a proper basis for a new
trial. Thus, in *Wash., B. & A. R. Co. v. Kimmey,* 141 Md. 243,
118 A. 648 (1922), a motion for new trial was filed by the
defendant on the day of the rendition of the verdict in the

original trial. At the hearing on the motion, affidavits were filed and evidence was adduced tending very strongly to show that the condition to which the plaintiff's claim for damages mainly referred was not the result of the accident on account of which the suit was brought but had existed long before its occurrence. The plaintiff had testified at the trial that before the accident she was in perfect health. The depositions in support of the motion for a new trial were directly to the contrary and indicated that preceding the accident the plaintiff had constantly suffered from the very condition which she had asserted was the result of the accident.

At the time of the presentation of these affidavits in open court no objection was made to them and they were admitted into evidence. Before the conclusion of the hearings a motion *ne recipiatur* as to the affidavits was filed on the ground that notice of a desire to file affidavits had not been given in the motion nor had the affidavits been filed within ten days of the motion for a new trial, as then required by the rules of the trial court. The motion *ne recipiatur* was granted and the trial court, having no newly discovered evidence before it, refused to order a new trial.

The Court of Appeals found that the rule regarding notice about and timely filing of affidavits had been waived by the plaintiff and that the trial court had erred in granting the motion *ne recipiatur*. The Court held that as a result of this error the appellant was deprived of the exercise of the judgment and discretion of the trial court upon the case, and ordered a new trial. In reaching this result, the Court of Appeals, in dicta, said:

> "By its action in granting the motion *ne recipiatur*, the court below excluded from its consideration all the proof tending to show that the theory upon which the plaintiff's claim largely depended was erroneous. *If the court had felt at liberty to consider the evidence, then for the first time available, that the plaintiff was subject, before the accident in question, to the physical*

*infirmity which it was supposed to have caused, and for which the defendant was therefore held liable, it is hardly conceivable that a new trial would have been refused. It would be plainly unjust to permit a verdict to stand, as · against an application for a new trial `seasonably made, if credible evidence, competent to be considered, and not previously discoverable by due diligence, supported the conclusion that the jury were misled as to the principal part of their award."* 141 Md. at 249-50, 118 A. at 650.

The principle that impeaching evidence constitutes a proper basis for the striking of an unenrolled judgment and the grant of a new trial where it is sufficiently significant to make it probable that a different result would be produced was affirmed in *Smith v. Lapidus*, 208 Md. 273, 118 A. 2d 373 (1955). There the mother of a child injured in a fall testified that the fall was caused by the breaking of a defective board in the floor of the porch on which the child stepped and that she had brought this defect to the landlord's attention. The landlord testified that the floor had been completely repaired just before the accident. An eyewitness testified that the fall occurred when the infant plaintiff was standing outside the rail taking clothes off a clothesline. His hand slipped off the rail and the clothesline, operating on a pulley, carried him out over the yard, where he fell. The boy recovered damages. A motion to strike the judgment alleged, in effect, that the mother's testimony was false. Exhibits attached to the motion consisted of hospital records containing an entry stating that the accident occurred when the patient "fell from second floor, reaching for clothesline," and an affidavit of a doctor who declared that he had made the entry and that the information as to the accident was obtained by him from the mother when the boy was brought in. The trial court found that there was no explanation for the statements in the medical record "except that the information given the hospital conflicts with the testimony of Mrs. Zimmerman at the trial." The trial court struck the judgments and granted a new trial. On appeal the Court of Appeals said:

> "The trial judge seems to have assumed the truth of everything stated in the appellants' affidavits, but took the view that in any event the entry in the hospital records tended to impeach the mother's testimony. He obviously felt that the entry, if presented to another jury, might affect the verdicts, or even the amount of the verdicts. This appears to be the purport of his brief opinion. We cannot hold that this was an abuse of discretion." 208 Md. at 279, 118 A. 2d at 376.

The same result was reached in *Bailey v. Bailey*, 186 Md. 76, 81, 46 A. 2d 275, 277 (1946), where a divorce was granted on the grounds of adultery. After the trial a petition for rehearing was filed in which it was averred that if given an opportunity, the husband could show that he was not in Baltimore at the time and place that the evidence tended to show he was when the act of adultery was allegedly committed by him. The grant of a rehearing was upheld by the Court of Appeals.

We believe that the impeaching evidence presented here was of sufficient significance to make it probable that a different result would be reached on a rehearing. The appellee was the only witness who testified as to the alleged act of intercourse. Her testimony was of paramount importance on the issue of paternity, since if her story was untrue there was no evidence upon which to base a finding of paternity. The proffered evidence, from a seemingly disinterested third party, was strong and convincing, and, if believed, would establish that her story was untrue. Thus, the effect of the proffered evidence would have been not merely to discredit the witness but rather to undermine the gravamen of appellee's case. Because the proffered evidence places the truth of the critical testimony and the essential facts in serious doubt, it would, if considered and believed, probably produce a result different from that reached at the original trial. Consequently it constitutes a proper basis upon which to grant a new trial.

In *Jones v. State*, 16 Md. App. 472, 477, 298 A. 2d 483, 486, *cert. denied*, 268 Md. 750 (1973), this Court enunciated the

principles which govern the grant of a new trial in a criminal case. There we stated:

"On the question of newly or after discovered evidence, it has been said:

'There must ordinarily be present and concur five verities, to wit: (a) The evidence must be in fact, newly discovered, i.e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on, must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.' " (Citations omitted.)

If the words "a different result" are substituted for the words "an acquittal," the quotation is a proper statement of the applicable principles in civil cases as well.

Here the record shows that the proffered evidence was in fact discovered after the trial and therefore is newly discovered. There are facts alleged which show that the evidence proffered by the appellant in support of his motion related to a phase of appellee's case which did not appear to have been disclosed prior to trial. Further the affidavits in support of the motion were filed within 20 days of the conclusion of the trial. Therefore, due diligence may be inferred.[4] Since no witness testified that appellant was not

---

4. Appellee's original petition for a determination of paternity and its accompanying affidavit alleged only that Mrs. Just and Mr. Angell had engaged in sexual relations beginning in the fall of 1961 or 1962 and continuing until 8 October 1971. That the alleged act of intercourse took place on 8 October 1971 in Mr. Angell's green Chevrolet pickup truck was not revealed until Mrs. Just testified at the original hearing.

Appellee contends that appellant did not exercise due diligence. She maintains that had appellant utilized the pre-trial discovery rules, he would have learned before trial that Mrs. Just would testify that the alleged act of intercourse took place on 8 October 1971 in appellee's truck and could readily have "discovered" before trial the evidence to show that his truck was in the possession of the Thurmont Citgo Station at that time.

That a failure to utilize discovery proceedings prior to trial is not

in possession or control of his truck on 8 October 1971, the proffered evidence relied on was not cumulative in nature. Moreover, because the proffered evidence was strong and convincing and refuted the only evidence tending to support the determination of paternity, it was not "merely impeaching," but rather was material to the issues and of such a nature that it would probably produce a different result at a new trial. Under the established rules or principles relating to the grant of a rehearing or new trial on the basis of newly discovered evidence, appellant was entitled to a rehearing.

The motion for a new trial or rehearing on the basis of newly discovered evidence "is designed to serve the ends of justice." *Jones v. State, supra,* 16 Md. App. at 478, 298 A. 2d at 486. Its exercise must not result in denying a litigant a substantial right. *State v. Baltimore Transit Co.,* 177 Md. 451, 455, 9 A. 2d 753, 754 (1939). We re-emphasize what the Court of Appeals said in *Wash. B. & A. R. Co. v. Kimmey, supra,* 141 Md. at 250, 118 A. at 650, that it would be plainly unjust to permit a verdict to stand as against a timely

---

necessarily a bar to an inference of due diligence is clear. *See Wash. B. & A. R. Co. v. Kimmey, supra,* 141 Md. at 252, 118 A. at 651, in which it was said:

"The evidence introduced by the defendant in support of its motion related to a phase of the plaintiff's case which was peculiarly within her own knowledge, and which does not appear to have been disclosed prior to the trial. No reference was made in her declaration to uterine hemorrhages as having resulted from the injuries received while she was a passenger in the defendant's car. It would not be reasonable to hold that the defendant was so strictly bound to anticipate such a claim as to be debarred from proving it to be fictitious, as a ground for an application, made in due time, to have the verdict set aside in order that the case might be retried."

In *Bailey v. Bailey, supra,* 186 Md. at 78-81, 46 A. 2d at 275-77, the petition for rehearing alleged that the testimony previously taken tended to show that the defendant had committed adultery with one Madeline Moltz; that there was no allegation in the bill of complaint naming Madeline Moltz as a co-respondent; that the defendant had no reason to summon her, and that therefore she was not in court when the testimony was taken; that he was wholly unprepared to offer the testimony of Madeline Moltz and unable to secure her attendance at the hearing. The petition further averred that, if given an opportunity, he could show that he was not in Baltimore at the time and place that the evidence tended to show he was when the alleged act of adultery was committed by him with Madeline Moltz. The Court of Appeals found no abuse of discretion in the chancellor's grant of the petition.

application for a new trial, if credible evidence competent to be considered and not previously discoverable ·by due diligence supported the conclusion that the trier of the facts was misled with respect to the gravamen of the case. Here, appellee gave birth to a child and is entitled to support payments from appellant if he is in fact the child's father. But it would be a gross injustice to charge the appellant with the responsibility of supporting the child until adulthood if he is not his father. A rehearing of the case, while providing both parties with an opportunity to resolve the doubts created by the newly discovered evidence, would leave appellee at liberty to obtain support for the child from appellant if she can prove that he is in fact its father. The only alternative to a retrial would be to affirm a judgment enforcing a claim the validity and merit of which, on this record, is highly suspect. We cannot in good conscience pursue this alternative.

Under the compelling circumstances of this case we find that the chancellor's denial of an opportunity for appellant, after a timely request, to present newly discovered evidence not previously discoverable by due diligence which, if believed, would probably have produced a result different from that obtained at the original trial, contrary to established rules and principles, deprived appellant of a substantial right and constituted an abuse of discretion.

In *Wash. B. & A. R. Co. v. Kimmey, supra,* 141 Md. at 250, 118 A. at 651, the Court of Appeals said:

"The defendant was entitled to the exercise of sound discretion in the disposition of its motion. A discretion could not be characterized as sound which wholly disregarded evidence by which its exercise should have been aided."

That Court held that the failure of the trial court to even consider proffered newly discovered evidence, which resulted in a failure on the part of the trial court to exercise any discretion at all, was reversible error. We believe that discretion cannot be characterized as sound which improperly regards newly discovered evidence by which its

exercise should have been aided. Here, the chancellor did consider the proffered newly discovered evidence but he regarded it in a manner contrary to established principles and rules. Such consideration is tantamount to no consideration at all and justifies reversal. Accordingly, we shall reverse the order of 7 August 1973 and remand the case for rehearing.[5]

> *Order of 7 August 1973 reversed.*
> *Case remanded for rehearing.*
> *Costs in the lower court to abide the result.*
> *Costs in this Court to be paid by Frederick County.*

5. In view of this holding we do not reach appellant's contention that the evidence is insufficient to sustain the determination of paternity.