474 A.2d 950

**GREAT SOUTHWEST FIRE INSURANCE COMPANY**

v.

**S.M.A., INC., T/A Latin Casino, et al.**

**No. 1060, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

May 10, 1984.

138

Daniel Karp, Baltimore, with whom were Donald C. Allen and Allen, Thieblot & Alexander, Baltimore, on brief, for appellant.

M. Stanley Radcliffe, Towson, with whom was Dennis J. Psoras, Baltimore, on brief, for appellees.

Argued before GILBERT, C.J., and LOWE and ADKINS, JJ.

LOWE, Judge.

The complicated recitation of the facts of this case is necessitated by the eight issues raised by appellant. The case rests upon whether the appellant breached its fire insurance contract by refusing to pay the appellees when their supper club, the Latin Casino, burned to the ground on June 20, 1976. When the suit was initially docketed on November 28, 1977, there were two defendant insurance companies, Great Southwest Fire Insurance Company (Southwest) and Market Insurance Company (Market) and four counts. By the time of trial on February 24, 1982, in the Circuit Court for Baltimore County, Market had been dismissed as insolvent which eliminated two of the original counts. Southwest was charged with a breach of its contract of insurance (Count I) and a bad faith refusal to pay insurance proceeds (Count III). A contested tactical voluntary dismissal of Count III during the trial left only the issue of Southwest's alleged contractual breach for the jury to decide, which it did in favor of the appellees, S.M.A., Inc. and Bury's Tavern, Inc.

By a ten year lease in 1967, the building, which subsequently housed the supper club, was leased with an option to buy to a corporation known as F.G.H., Inc. After obtaining a liquor license, furniture and fixtures, F.G.H., Inc., in 1968, subleased the furnished building to S.M.A., Inc., giving it an option to purchase for approximately two and one-half times the F.G.H., Inc. option.

Five years later in 1973 S.M.A. purchased all of the issued and outstanding shares of stock of F.G.H., thus obtaining its lower purchase option. The Agreement of Sale provided that F.G.H. would "cause to [be] transferred to S.M.A." all of the assets of F.G.H. which included the liquor license, and presumably, the furniture and fixtures. This was never done; however, S.M.A. acted as if it had been a fait accompli and even reported such personalty as its property to the Internal Revenue Service. In 1976, S.M.A. insured the building for $120,000 and its contents for $60,000 with Market.

In that same year, Bury's Tavern, Inc. was permitted to exercise the original option to purchase the land and buildings for $125,000. Bury's Tavern was owned by the son of an S.M.A. principal. The two corporations then sought through their agent to replace the Market policy which they did by insuring with Southwest to the extent of $200,000 on the building, $60,000 on the contents and $22,000 for loss of rents. Market's policy was surrendered to the broker, John Sitaris, for cancellation on June 18, 1976. Following a bull roast for seven hundred people on June 20, 1976, the building and contents were destroyed by fire.

On the first day of trial, before the jury was sworn, appellees announced (out of the jury's presence) that they had only that evening past realized that S.M.A. did not own all of the contents as claimed by its suit and amended the proof of loss from the $143,522.77 worth of personal property destroyed to that which S.M.A. owned in its own name (worth $40,002), since F.G.H. was not a party to the suit.

Southwest defended the suit on two primary grounds. It attempted to prove that the appellees were guilty of false swearing which, according to the terms of the policy, voided it and that the appellees deliberately set the fire. It did not succeed. The jury returned a verdict on the issues in favor of appellees and the trial judge fixed and apportioned damages in accordance with the policy.

Appellant's first contention—that appellees were guilty of false swearing, as a matter of law—is disposed of rather easily. The policy provides that:

"This entire policy shall be void if, whether before or after the loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto."

Appellant recites a plethora of conflicting testimony as to appellees' representations, as well as conflicting and controverted evaluations which it contends were "obviously fraudulent". The two "most glaring instances of false swearing" consisted of the "spurious explanation" for the above-mentioned amendment to the proof of loss contents' coverage by S.M.A. which appellant contends to have been an "obvious fraud". Secondly, because appellees initially declared in their proof of loss that Market coverage which they later contended at trial they had intended to cancel by surrender to the broker, appellant alleges there was false swearing as a matter of law about the amount of insurance declared in the proof of loss.

Appellant's own authority points out that to constitute false swearing within the meaning of a contract of insurance, the misstatements must be "knowingly and intentionally stated with knowledge of its untruthfulness," *Fire Ins. Co. v. Merrick*, 171 Md. 476, 491, 190 A. 335 (1937), and the " '[i]ntent to defraud is not to be presumed and ... the jury should make all reasonable allowance for lack of knowledge, or sound judgment, or for honest mis-

take on the part of the insured.' " *Tru-Fit Clothes v. Underwriters at Lloyd's London,* 151 F.Supp. 136, 139 (D.Md.1957). These cases, as well as those cited by appellees—*Planters' Mutual Ins. Co. of Wash. Co. v. Deford, et al.,* 38 Md. 382 (1873) and *German Union Co. v. Cohen,* 114 Md. 130, 78 A. 911 (1910)—presuppose that such issues are jury questions. There were in this case plausible explanations before the jury and it chose to believe them. We cannot hold, as a matter of law, that it was wrong.

■ Appellant alternatively laments the declination of the trial court to accept in totidem verbis three of its requested instructions relating to false swearing. It will suffice that we have carefully compared the requested instructions with the instructions actually given and find that the latter fairly covered the former, thus complying with Md.Rule 554 b 1. Appellant's chagrin seems to be that the instructions did not factually highlight its version of the facts to the law espoused; but to that, of course, it has no entitlement. There was no instructional error here.

■ The third issue finds appellant straining at gnats. It complains that the jury should not have found that the building at issue sustained damages having an actual cash value of $350,000 because the highest estimate of the building's cash value was $349,941.66. This $58.34 discrepancy, according to the appellant, indicates that the jury "did not take its responsibilities seriously enough" and, consequently, the judgment should be reversed.

Technically appellant asked, on issues framed by it, only the amount of damage the building had sustained, while the testimony addressed the building's overall cash value. This was probably so because the building was totally destroyed; however, there was no harm done by the rounding off of the de minimus dollars involved. Appellant carried $200,-000 on the building and Market had $120,000. As a consequence, the $58.34 discrepancy had no possible effect upon appellant's exposure and without injury we do not recognize

error as reversible. *Blondes v. Hayes,* 29 Md.App. 663, 670–672, 350 A.2d 163 (1976).[1]

■ Fourth, appellant again brought upon itself the course the jury chose to pursue. The issue it proposed was:

> "b. What was the value, if any, of the contents, owned by S.M.A., Inc., of the building? (Your finding may not be more than $40,002.00).
>
> $_____"

The jury returned that maximum figure, which was supported by the ledger entries of the purchase price together with a corporate principal's opinion that the then present value was $40,002. Since appellant offered nothing in rebuttal, that was the only figure the jury could have arrived at in good conscience.

■ We also find no difficulty with the jury's having found $8,000 in rental losses. Again, appellant's issues—offered and accepted—placed a cap of $22,000 on this item, but appellant now claims the testimony was not sufficient to sustain the $8,000 figure which was based upon a rental agreement negotiated but not quite finalized when the fire occurred. Although the rent to be paid was not determined in that negotiation, past rental agreements provided to the jury were adequate guides to a likely sum, and its verdict was lower than any of those past rental agreements. While the testimony left substantial latitude within which the jury could choose, the evidence was sufficient to comprehend the $8,000 figure.

■ The sixth issue deals with the fact that two corporate principals of the appellees at first agreed to a polygraph test but upon advice of counsel subsequently declined. That declination was offered by the testimony of appellant's witness but was refused by the court. Suffice to say that neither this Court nor the Court of Appeals has ever mandated or even permitted the admissibility of evidence that it

---

**1.** The final judgment before entry was adjusted by the court to compensate for the $58.34 difference.

considers unreliable. *Kelley v. State*, 288 Md. 298, 302, 418 A.2d 217 (1980). We certainly would not mandate the admission of a refusal to take an unreliable test as an indication of veracity.

Seventh, appellant complains that the court should not have permitted appellees to dismiss their count charging the appellant with a bad faith refusal to pay its claim. What appears from the record, however, is the appellant's complaint that it was tactically out-snookered.

Relying on its right to defend against the bad faith claim, it sought to show its good faith state-of-mind by introducing double hearsay testimony suggesting that the appellees deliberately burned their own building. To obtain admissibility this testimony was cleverly offered not for the truth of its content but only to show appellant's state-of-mind, *i.e.,* its good faith reticence in withholding the proceeds. See *Buzbee v. State*, 58 Md.App. 599, 473 A.2d 1315 (1984); *Borza v. State*, 25 Md.App. 391, 335 A.2d 142 (1975).

A fire investigator was proffered to testify that a fourteen-year-old daughter of a corporate principal had implicitly substantiated appellant's suspicion of arson and her statements of admissions by the principals were to be related. Appellees vigorously objected to such double hearsay, and when the court indicated that it was accepting appellant's abstruse theory of admissibility that the "verbal act" of the statement was relevant to appellant's good faith defense and not for the truthfulness of the statement's contents, appellees removed the basis of appellant's evidentiary proffer by dismissing the bad faith count upon which the verbal-act-state-of-mind argument was predicated.

"THE COURT: ... I am going to grant your motion
. . . .

.        .        .        .        .

THE COURT: It's a little deeper than that. They are talking about an extra-judicial statement for the purpose not to show the truth of the statement but to show the

reasons why a witness did something, that is what they are talking about.

MR. RADCLIFFE [appellees' attorney]: The reason why a witness did something, that is exactly right.

THE COURT: Conduct, state of mind they are talking about. I am not letting it in because it goes right to the arson, that is the reason why they didn't pay it, but not the breach per se.

MR. ALLEN [appellant's attorney]: That is correct, sir.

THE COURT: They are going to have to prove they didn't breach it other than through hearsay.

MR. RADCLIFFE: We withdraw our claim under Count Three.

MR. ALLEN: Oh, sure.

MR. RADCLIFFE: We withdraw our claim under Count Three. I have just spoken to both of my clients."

■ Appellant now complains that it had prepared to rebut the bad faith allegation and should have had that right preserved. It attacks appellees' ethics and the court's legal right to permit the withdrawal of that count; but we fail to see how appellees' tactical decision to withdraw that count to avoid hearsay damaging their breach count is unethical; certainly it is no worse than attempting to introduce such hearsay, prejudicial to the breach count, which under the present circumstances becomes an evidentiary subterfuge predicated upon an operative verbal act theory. Both procedures were a legally proper taking of an advantage of procedural law to further or protect a client's interest. Appellant's invective suggestions of ethical impropriety and plea for "fundamental fairness" come with ill-grace.

■ Its legal argument is not better founded. The dismissal was obviously with prejudice, but appellant's complaint that it has not been awarded costs does not affect the right to dismiss subject to the court's discretion. Md. Rule 541, dealing with voluntary dismissals, is virtually identical to Fed.R.Civ.P. 41. See *Plater v. Kane Warehouse*, 241

Md. 462, 217 A.2d 102 (1966); *Colonial Carpets v. Carpet Fair,* 36 Md.App. 583, 374 A.2d 419 (1977). Appellant is not alone in finding no Maryland authority denying a plaintiff a right to dismiss. The federal courts are unable to point to any case where a plaintiff on his own motion was denied such right under their comparable rule. *Smoot v. Fox,* 340 F.2d 301 (6th Cir.1964).

■■ In reviewing the judge's discretion permitting such dismissal, the only "prejudice" we have seen is depriving the appellant of the right to have a jury hear and "disregard" for deliberative purposes evidence prejudicing appellees, which the jury was not entitled to hear as substantive evidence in the first place. Appellant's state-of-mind was no longer relevant so the "verbal act" was no longer relevant. Appellant's complaint can only be that the improper substance of the hearsay was not before the jury. We see no error or abuse of discretion in permitting the dismissal. Although appellant notes that the court did not award it costs as it had promised,[2] appellant does not ask us to correct that oversight, only to give it an entirely new trial. It is wrong in the latter request and we will not insult the appellant by thrusting the former miniscule relief upon it that it did not deign to seek.

Finally, appellant complains that the court erred in refusing to grant it a new trial on the basis of newly discovered evidence. Appellant relies on *Angell v. Just,* 22 Md.App. 43, 321 A.2d 830 (1974), which adopted in a civil case the test we had previously espoused in a criminal case, *Jones v. State,* 16 Md.App. 472, 477, 298 A.2d 483 (1973).

" 'On the question of newly or after discovered evidence, it has been said:

'There must ordinarily be present and concur five verities, to wit: (a) the evidence must be in fact, newly

---

**2.** When the appeal previously was dismissed as premature due to the failure to enter "final judgment", we suggested to the trial judge that such order of dismissal be entered with costs and note that it was done prior to the perfection of the current appeal.

discovered, i.e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on, must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal'. (Citations omitted).

If the words 'a different result' are substituted for the words 'an acquittal,' the quotation is a proper statement of the applicable principles in civil cases as well." 22 Md.App. at 54, 321 A.2d 830.

Appellant again complains that on the first day of trial appellees were permitted to amend their proof of loss by reducing its contents claim. This time appellant argues that it was thus prevented from cross-examining and impeaching appellees on the question of value.

◼ We are unaware of any law requiring a person to stand by a misstatement simply because his opponent had discovered and intends to exploit it; for purposes of reviewing the denial of a new trial motion, it suffices that appellant's assertion that it was prepared to impeach presupposes knowledge of the true facts before trial. Obviously, there was no newly discovered evidence after trial began of facts unknown to appellant. *Angell v. Just, supra.*

◼ Secondly, appellant complains that appellees claimed at trial that the Market Policy had been cancelled when it was turned back to the broker for that purpose; however, appellant had taken the deposition of the broker and knew all of the facts related to that transaction. Such evidence was certainly not "newly discovered", only the appellees' construction placed upon it was new at trial.

Appellant then complains that only after trial did it learn the true facts of the aborted cancellation prior to the fire of that Market policy, which the judge ultimately ruled was still in effect when the building burned. All of that information except for the judge's decision was available to

appellant before trial. Appellees' reliance or nonreliance on the status of the policy does not make existing facts subject to discovery before trial, "newly discovered" evidence after trial simply because the appellant was unaware of their relevance or significance.

When you have a bad day, put it behind you and move on to the next order of business.

JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.