591 A.2d 837 (1991)
W.M., Appellant,
v.
D.S.C., Appellee.
D.S.C., Appellant,
v.
W.M., Appellee.
Nos. 88-857, 88-942.
District of Columbia Court of Appeals.
Argued February 14, 1991.
Decided May 21, 1991.
*838 Mark A. Barondess, Vienna, Va., for appellant/cross-appellee W.M.
Mary L. Wilson, Asst. Corp. Counsel, with whom Herbert O. Reid, Sr., Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, were on the brief, Washington, D.C., for appellee/cross-appellant D.S.C.
Before ROGERS, Chief Judge, and TERRY and SCHWELB, Associate Judges.
*839 ROGERS, Chief Judge:
Appellant W.M. appeals from the judgment adjudicating him to be the father of a minor child born to appellee D.C. on the grounds that the trial court's finding of paternity is clearly erroneous, the amount of child support is invalid under the child support guideline then in effect, and the trial judge abused her discretion in denying appellant's motions for a new trial and for relief from judgment. Appellee filed a cross appeal on the ground that the trial judge abused her discretion by denying child support retroactive to the date of birth. We find appellant's contentions unpersuasive. However, we agree with appellee that the trial judge should have awarded retroactive child support. Accordingly, we reverse the order denying retroactive child support and remand the case for further proceedings, and otherwise affirm.

I
A child was born to appellee D.C. on September 4, 1986, after she had filed a petition on May 6, 1986, for custody and child support, naming appellant W.M. as the father of the child. At trial, appellee testified that the parties had an intimate relationship from May, 1984, to January, 1986, during which they saw each other frequently and had sexual intercourse on most of these occasions. Appellee expressly recalled that they had sexual intercourse several times during December, 1985, the likely period of conception of the child, including the first Saturday after her birthday (December 7, 1985). Appellee's brother and her two roommates testified regarding their observations which led them to believe that appellee and appellant had an intimate sexual relationship, noting appellant's frequent visits to appellee's bedroom.
In addition, appellee introduced into evidence, over appellant's objection, the results of two HLA (Human Leukocyte Antigen) tests[1] which showed a 99.97 percent likelihood that appellant was the father of appellee's child and excluded appellee's other boyfriend as the child's father.[2] The HLA tests were interpreted by Dr. Wurzinger, associate director of the Department of Paternal Evaluation of the Roche Biomedical Laboratories in Burlington, North Carolina, who also testified about the chain of custody of the test samples and the standards used by the laboratory.
Appellant denied paternity, testifying that he had never had a sexual relationship with appellee. He admitted meeting appellee as a result of answering her advertisement in the personal section of a magazine, becoming friends with her, and sending her postcards signed "Love." He challenged the results of the HLA tests on the ground that appellee had not demonstrated that the man who appeared to give the second blood sample was in fact appellee's other boyfriend. Appellant also presented expert testimony about problems experienced by Roche Laboratories in 1984-86, before their accreditation, regarding the adequacy of supervisory review of test procedures, and questioned Dr. Wurzinger's expertise.
The trial judge found that appellant was the father of appellee's child, and ordered him to pay child support of $800 per month, retroactive to the date of the adjudication of paternity, December 3, 1987. The judge denied appellant's motions for a new trial and for relief from judgment, rejecting appellant's claims that the findings were contrary to the credible evidence, and that newly discovered evidence showed he was out of town between December 2 and 7, 1985.

*840 II
On appeal appellant renews the claims of error that he raised in his motions for a new trial and relief from judgment, and contends that the trial judge erred in calculating the amount of child support.

A.
Appellant contends that the trial judge's factual findings that he was the father of appellee's child are contrary to the credible evidence and that he was prejudiced by the improper admission of evidence of an HLA test which excluded appellee's other boyfriend as the father of her child. Credibility is for the trial judge to determine, as appellant acknowledges, and we find no basis on which to overturn the determinations made in the instant case. See Cohen v. Cohen, 240 A.2d 662, 663 (D.C.1968). Appellee's testimony about her relationship with appellant was corroborated by the testimony of her brother and roommates which the judge could properly credit over appellant's denial of a sexual relationship with appellee. Nor do we find clearly erroneous the trial judge's finding that appellee and her other boyfriend did not have sexual intercourse during the period of conception. The trial judge could properly take judicial notice that the period of conception is about 280 days, or nine months, see L.C.D. v. District of Columbia ex rel T.-A.H.D., 488 A.2d 918, 919 n. 1 (D.C.1985); District of Columbia v. Mock, 217 A.2d 113, 115 n. 4 (D.C.1966), and based on evidence that appellee's last menstrual period occurred on November 23, 1985, find that appellant had sexual intercourse with appellee during the critical period for conception. The judge's finding that appellee had no sexual relations with any other man during the period of conception is supported by the evidence and not clearly erroneous. See S.A. v. M.A., 531 A.2d 1246, 1249 (D.C.1987).

B.
In support of his claim of prejudicial error when the trial judge admitted into evidence the blood tests, appellant contends that appellee failed to lay a proper foundation, that he was denied statutory notice the HLA tests had been performed on appellee, her child, and her other boyfriend, and that Dr. Wurzinger was only minimally qualified to testify as an expert in paternity testing and was unfamiliar with the laboratory used. Appellant also contends that the HLA report on the other boyfriend was not properly admitted under the business records exception to the hearsay rule. He relies on L.C.D., supra, 488 A.2d at 921-22 (HLA test admissible upon proper authentication by laboratory director), and Super. Ct.Civ.R. 43-I (business records).
At trial, appellant objected to the admission of (1) the HLA report on the other boyfriend's blood test, (2) the authorization form signed by the other boyfriend when he gave the sample, and (3) a copy of the other boyfriend's identification, which he submitted when he gave the sample. Appellant did not, however, object to Dr. Wurzinger's oral testimony regarding the report. Rather, appellant maintained that there was insufficient evidence of the chain of custody of the report, that appropriate lab procedures were followed, and that the other boyfriend was actually the man who appeared to give the blood sample. The trial judge initially sustained the objection, finding insufficient proof that appellee's other boyfriend was the person who had appeared and given the blood sample. Thereafter appellee's brother testified that he knew the other boyfriend and that the identification photograph was that of the other boyfriend. Dr. Wurzinger also presented additional testimony regarding the chain of custody at the laboratory. The judge then admitted the exhibits, concluding that they had been properly authenticated. The judge also continued the trial at the end of all the evidence to allow appellant to obtain the raw data of the HLA test of the other boyfriend and to have his expert review it; another continuance, for ten days, followed, and appellant thereafter declined to present further evidence.
Appellant did not file written objections to the test results as required by D.C.Code § 16-2343.1(b)(1) (1989). See *841 District of Columbia v. E. McB., 557 A.2d 941, 942-43 (D.C.1989). He therefore waived his opportunity to contest them. D.C.Code § 16-2343.1(c)(1) (waiver of objection to testing procedures, admission of results, and report on statistical probability absent timely objection). Appellant also waived any objection to Dr. Wurzinger's qualifications since his counsel said he had no objections to certification of him as an expert. See Georgetown College v. Diavatis, 470 A.2d 1248, 1251 (D.C.1983). Furthermore, the HLA test report of the other boyfriend was not crucial to the judge's finding of paternity. L.C.D., supra, 488 A.2d at 922 (assuming error in admission of HLA test results, error was harmless). The only evidence of appellee's sexual intercourse with the other boyfriend was that it occurred before and after the conception period; they were not in contact in November and December, 1985. Thus, any error in the admission of that test would have been harmless, and the trial judge did not abuse her discretion by denying appellant's motion for a new trial. See Pyne v. Jamaica Nutrition Holdings Ltd., 497 A.2d 118, 126 (D.C.1985) (denial of Super. Ct.Civ.R. 59 motion reviewable for abuse of discretion).

C.
We also find no abuse of discretion by the trial judge in denying appellant's motion for relief from judgment based on allegedly new evidence that he was absent from the jurisdiction from December 2-9, 1985. See Forgotson v. Shea, 491 A.2d 523, 528 (D.C.1985) (Super.Ct. Civ.R. 60(b) motion reviewable for abuse of discretion). The evidence which appellant sought to presentairline tickets, rental car receipts, and witnesses to show that he was away from Washington, D.C.,was not "new" evidence within the meaning of Super.Ct.Civ.R. 60(b)(2). Id. During trial appellant denied having receipts of his various trips out of the District of Columbia, and then sought, on rebuttal, to introduce a single charge to an American Express account showing that he was in the state of Georgia on December 7, 1985. In addition, contrary to the representation in appellant's motion for relief that he did not learn about appellee's reliance on December 7, 1985, until she testified on rebuttal, appellee testified on cross-examination that she had sexual intercourse with appellant on the Saturday following her birthday, December 7, 1985. In any event, appellant's failure to ascertain during pretrial discovery the dates of intercourse on which appellee would be relying provides no basis for finding trial court error in denying his motion for relief from judgment. Super. Ct.Civ.R. 60(b)(2); Forgotson v. Shea, supra, 491 A.2d at 528.
In addition, the evidence that appellant wished to introduce as "new" evidence was not exculpatory in view of the other evidence that the parties had sexual intercourse during the critical period for conception. Contrary to appellant's contention, appellee's testimony that they had intercourse on December 7, 1985, is not tantamount to a claim that December 7th was the date of conception. Consequently, the judge could reasonably conclude that the purported "new" evidence did not support the conclusion for which it was proffered. The judge had presided over an eight-day trial and was in a good position to judge the credibility of the parties and appellee's witnesses who saw appellant at appellee's home during December 1985, and weigh the evidence of appellant's HLA test report. See Cohen, supra, 240 A.2d at 663.[3]

D.
Finally, we find no error in the award of $800 a month in child support. Under the child support guideline then in *842 effect, the judge found that appellant owed appellee $797 a month in child support, and concluded that $800 was within the range provided by the guideline and consistent with the present needs of the child. See D.C.Ct.Rules Ann. 21, 31 (1988) (Appendix to Family Division Rules); 115 W.D.L.R. 1 (Oct. 27, 1987); D.C.Code § 16-916.1(r) (Supp.1990). In addition, the judge concluded that appellant was not financially able to pay a larger amount. Appellant's contention that the trial judge abused her discretion by including his income tax refund in calculating his annual income is meritless. See id. The evidence indicated the refund arose as a result of tax benefits of rental property owned by appellant and was properly viewed as disposable income. Accordingly, we find no basis for finding that the trial judge abused her discretion. S.A. v. M.A., supra, 531 A.2d at 1256.

III
Appellee, on cross appeal, contends that the trial judge erred in declining to award retroactive child support since appellant had been served with the petition to determine paternity prior to the child's birth and appellee was forced to bear all the medical and other expenses associated with the child since his birth. In her complaint, appellee alleged that both parties were able to contribute to the support of the child and to the expenses relating to his birth and the cost of appellee's prenatal care. The judge made the child support award retroactive only to the date of the adjudication of paternity, when the child was 15 months old.
D.C.Code § 16-916(c) (1989) provides:
When a father or mother fails to maintain his or her minor child, the Court may decree that the father or mother pay reasonable sums periodically for the support and maintenance of the child, that the parent obtain medical insurance for the child whenever insurance is available at a reasonable cost, and that the father or mother pay Court costs, including counsel fees, to enable plaintiff to conduct the case.
Thus, the obligation to support minor children is shared by both parents, and applies to children born out of wedlock as well as children born in wedlock. See D.C.Code §§ 16-916(a), 30-320 (1989).[4] This mutual obligation also underlies the child support guidelines. See D.C.Code § 16-916.1(b)(1) (Supp.1990).
In addition, the District of Columbia has, consistent with Supreme Court decisions interpreting the Equal Protection Clause of the Fourteenth Amendment, eliminated distinctions between the rights of children born in and out of wedlock. E.g., District of Columbia ex rel. W.J.D. v. E.M., 467 A.2d 457, 461 (D.C.1983) (two-year statute of limitation on the filing of claims for child support on behalf of out-of-wedlock children held unconstitutional) (citing Pickett v. Brown, 462 U.S. 1, 103 S.Ct. 2199, 76 L.Ed.2d 372 (1983) (two-year statute of limitation on actions seeking paternal support of illegitimate children unconstitutional where no similar restriction on rights of legitimate children to seek support)). Under District of Columbia law, a child born in wedlock may receive pendente lite support, in the court's discretion. D.C. Code § 16-916(a) (1989). It necessarily follows that a child born out of wedlock may receive comparable support.
In Cyrus v. Mondesir, 515 A.2d 736, 738 (D.C.1986), moreover, the court interpreted the District of Columbia statutes to include the provision for retroactive child support. The court held that retroactive child support must be available to children born in and out of wedlock under the Uniform Reciprocal Enforcement of Support Act (URESA), D.C.Code § 30-315 (1988); Cyrus, supra, 515 A.2d at 739 (construing D.C.Code *843 § 16-916(c)). In so doing the court observed that in the absence of "an interpretation permitting retroactive child support awards, trial courts will be powerless to assure that a child born out of wedlock recovers support from a man ultimately adjudicated to be the child's father during any part of the time when paternity was, at least judicially, undetermined." Id. at 738. The court explained that it wished to avoid an interpretation of District law that would create an incentive for men to avoid their obligations by delaying the determination of paternity and that would be contrary to the statutory purposes of providing for the child regardless of the circumstances of birth. Id. at 738-39 (citing D.C.Code § 16-916(c) and Trezevant v. Trezevant, 403 A.2d 1134, 1137-38 (D.C.1979) (retroactive increase of installments of child support payments due after motion seeking increase due to changed circumstances was filed)). Although the court did not reach the question whether retroactive child support should presumptively be awarded, the court made clear precisely why such an award was normally warranted:
[T]he prospect of a retroactive award may allow a mother to use more of her own resources to care for her child during paternity proceedings, with the expectation of replenishing the resources available for her child by way of a retroactive award. On the other hand, the unavailability of a retroactive award would unduly burden a mother who would have to bear alone the financial burden of supporting a child during the period before the entry of an order granting support. The public's interest in minimizing the drain on the public fisc is also served by permitting retroactive awards because, in some cases at least, the District of Columbia could seek reimbursement for child support expenses it incurred during paternity proceedings. See D.C.Code § 30-305 (1981).
Id. at 739.
Today we join the courts in other jurisdictions which recognize that a child's needs begin at birth. E.g., Mason v. Reiter, 564 So.2d 142, 144 (Fla.Dist.Ct.App. 1990). Other courts similarly recognize that the father of a child born out of wedlock is under an obligation to support the child whether or not there has been a prior adjudication of paternity. E.g., Weaver v. Chester, 195 Ga.App. 471, 471, 393 S.E.2d 715, 716 (1990) (awarding support for time prior to determination of paternity, based on father's pre-existing obligation); Napowsa v. Langston, 95 N.C.App. 14, 20, 381 S.E.2d 882, 886 (1989) (father's liability for child support exists prior to and independent of the adjudication of paternity). In other jurisdictions in which the courts have recognized a right to retroactive child support, there has likewise been an acknowledgment of the greater need for retroactive support for children born out of wedlock. In awarding retroactive support to a child born out of wedlock, the Massachusetts Appeals Court noted in Dep't of Revenue v. Roe, 29 Mass.App. 967, 968, 560 N.E.2d 1288, 1289 (1990):
There is a greater need for retroactive orders to protect children born out of wedlock than other children because the paternity of the father of a child born out of wedlock is not presumptively established by the fact of marriage and may take some time to be established.
See also Coleman v. Mackey, 424 So.2d 170, 172 (Fla.Dist.Ct.App.1983) (right to retroactive child support).
Accordingly, we conclude that retroactive child support should normally be awarded for a child born out of wedlock. The policy reasons have already been set forth by the court in Cyrus, supra, 515 A.2d at 739 (quoted supra). The fortuity of gender cannot determine the extent of a parent's obligation to his or her child. In effect, therefore, there is a rebuttable presumption arising from the statutory obligation of support in favor of awarding retroactive child support for a child born out of wedlock. Thus, absent a showing of reasons why a father should be relieved of his statutory obligation to contribute to the support of his child from the moment of the child's birth, the court should award child support retroactive to the date of the child's birth. Cf. D.C.Code § 16-916.1(l) (child support guidelines). We expect that *844 this will be the norm, and the nature of the burden of proof on the mother is confined to offering proper proof of reasonable expenses, see Napowsa v. Langston, supra, 95 N.C.App. at 20, 381 S.E.2d at 886, and not to demonstrating need. See Pensa v. Sklinar, 547 So.2d. 284, 285 & 285 n. 1 (Fla.Dist.Ct.App.1989) (citing McQueen v. Stratton, 389 So.2d 1190 (Fla.Dist.Ct.App. 1980) (award of retroactive support proper where father failed to present evidence to show why such an award should not be made));[5]see generally Johnson v. United States, 398 A.2d 354 (D.C.1979) (trial court discretion).
The trial judge denied appellee's request for retroactive child support to the date of the child's birth or the date of the filing of the petition on the basis of the financial circumstances of the parties, appellant's other obligations under the court's order[6] and "the other circumstances of this case." From the record we have no way of knowing what "other circumstances" influenced the judge's decision. Appellant, an employee of the federal government, had a net monthly income twice that of appellee and owned rental properties. He also had debts and support obligations for two other minor children. Nevertheless, the trial judge's findings with regard to his financial circumstances do not demonstrate that he should be entirely relieved of his obligation to pay retroactive child support.
Since this court has not previously articulated that the award of retroactive child support should be the norm, the trial judge understandably did not consider appellant's statutory obligation to support his child as of the date of birth in terms of his burden to demonstrate why he should be relieved, in whole or in part, of paying retroactive child support. In light of what we have said in this opinion, however, the denial of such support is reversed, and the case is remanded to the trial court for an appropriate exercise of discretion incorporating the legal principles set forth in this opinion. In all other respects we affirm.
NOTES
[1] The tests of the parties and child were the second tests of the parties' blood samples, taken at appellant's request.
[2] Appellee testified that she had contact with her other boyfriend, a resident of the Virgin Islands, on only two occasions (during visits to her family in the Virgin Islands), in October, 1985, and January, 1986. He was not in or near Washington, D.C., appellee's place of residence, during the period of conception. Appellee had her November menstrual period after her October visit with him; she had missed her December menstrual period before seeing him again in January.
[3] Appellant's reliance on Opp v. Davis, 133 Ind. App. 365, 179 N.E.2d 298 (1962), is misplaced; the evidence before the trial judge was not mere accusatory speculation by appellee. Likewise appellant's reliance on Angell v. Just, 22 Md. App. 43, 321 A.2d 830 (1974), is misplaced; there the sole evidence in support of paternity was the mother's testimony that she had sexual intercourse with the alleged father on one occasion, which he denied, and hence proof by the alleged father that he could not have been present on the specified date negated the only evidence against him.
[4] Under the Uniform Reciprocal Enforcement of Support Act, as adopted in the District of Columbia:

The natural father and the natural mother of an illegitimate child shall have the duty to support such child while such child is a minor. The alleged father's or alleged mother's parenthood of the illegitimate child may be established either by judicial process or by acknowledgement by the person whose parenthood is thus determined.
D.C.Code § 30-320 (1988).
[5] In Valdes v. Lambert, 568 So.2d 117, 118-19 (Fla.Dist.Ct.App.1990), the court, disagreeing with McQueen, limited the retroactive award for out-of-wedlock children to that available to children born in wedlock, viz. to the time of the filing of the action seeking support.
[6] Regarding the paternity phase of the trial, the judge ordered appellant to pay $4,800 as a contribution towards appellee's attorney's fees, and $1,500 as a contribution toward her costs.