**Frances A. EDWARDS, Appellant,**

v.

**Kamau A. LATEEF, Appellee.**

No. 88–50.

District of Columbia Court of Appeals.

Argued Feb. 28, 1989.
Decided May 9, 1989.

Susan S. McDonald, Asst. Corp. Counsel, with whom Frederick D. Cooke, Jr., Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellant.

Natalie O. Ludaway, with whom Frederick A. Douglas, Washington, D.C., was on the brief, for appellee.

Before NEWMAN, TERRY and STEADMAN, Associate Judges.

NEWMAN, Associate Judge:

The issue presented by this case is whether the District of Columbia's Uniform Reciprocal Enforcement of Support Act (URESA) may be used as a mechanism to recover arrearages in child support that accrued prior to February 24, 1987, the date when URESA was amended to specifically include arrearages within the definition of a duty to support. Because this amendment provides nothing more than an additional remedy to collect child support under URESA, we disagree with the trial court's holding that application of the amendment to the claim in this case would constitute an impermissible, retroactive application of the statute. Accordingly, we reverse and remand.

I.

Frances Edwards and Kamau Lateef were married in 1968 and divorced in Ohio in 1971. One child was born of the marriage. Pursuant to the final divorce decree, Lateef was to pay $20 per week in child support. Sometime after the divorce, Lateef moved to the District of Columbia.[1]

---

1. The record is unclear as to when Lateef left Ohio and moved to the District, although it appears that the Ohio court had *in personam* jurisdiction over Lateef and Edwards when it rendered its final divorce decree. The record does indicate that Lateef was present in the

Lateef stopped making child support payments and on December 31, 1984, an Ohio court granted Edwards a judgment in the amount of $8,560 for arrearages through November 30, 1984. Arrearages continued to accrue until the end of 1985, totalling the $9,520 now in dispute.[2]

Edwards initiated a reciprocal support action in Ohio to recover arrearages through December 31, 1985. On October 8, 1986, a judge sitting in the Summit County Court of Common Pleas certified that Lateef owed $9,520 in arrearages and that Edwards' petition set forth facts indicting that Lateef owed a duty of support. The petition was transmitted to the District of Columbia and was filed by the Corporation Counsel of the District of Columbia in Superior Court pursuant to URESA, D.C.Code § 30–314 (1981), on June 4, 1987.

A hearing was held on July 16, 1987. Lateef argued that the arrearages which had accrued prior to the 1987 amendment of URESA were not recoverable thereunder.[3] The trial court held that Edwards would not have been able to recover arrearages under the law prior to the amendment in light of our decision in *Schlecht v. Schlecht,* 387 A.2d 575, 578–79 (D.C.1978) (URESA does not encompass recovery for arrearages accrued prior to filing of URESA petition). *Edwards v. Lateef,* 116 Daily Wash.L.Rptr. 69, 72 (Jan. 13, 1988). In this ruling, the trial court was correct. The trial court further ruled that the amendment applied prospectively only since there was no showing of legislative intent to the contrary, citing *Wolf v. District of Columbia Rental Accommodations Commission,* 414 A.2d 878, 880 n. 8 (D.C.1980). *Id.* It is in this latter ruling that the trial court erred.

## II.

The Uniform Reciprocal Enforcement of Support Act was adopted by the District in 1957; it was based on the model act of 1950 that was revised in 1968. *See* D.C.Code §§ 30–301–326 (1988). *See generally* Unif. Reciprocal Enforcement of Support Act, 9B U.L.A. 381 (1968 Revised Act), 553 (1950 Act) (1987). The District did not amend its version of URESA until recently, when it enacted the District of Columbia Child Support Enforcement Amendment Act of 1985, D.C. Law No. 6–166 (Amendment Act), creating an "improved procedure for the establishment and collection of debts due and owing for the support of minor children." Report of the Committee on the Judiciary, Council of the District of Columbia, on Bill No. 6–134, Dec. 4, 1985, at 2 (Committee Report). Among other things, the Council enacted this legislation to meet the requirements imposed on the District and the states under the Child Support Enforcement Amendments of 1984, codified at 42 U.S.C. §§ 651–667 (Supp.1987), which requires jurisdictions to adopt measures to facilitate interjurisdictional enforcement of child support duties in order to receive federal funds for their child support programs. *Id.*

URESA sets forth certain procedures to enforce child support duties across jurisdictional lines. Under one such process, a petition is filed in the initiating state and, upon certification, transmitted to the responding state where jurisdiction over the other parent can be obtained. *See* D.C. Code § 30–314 (1988). After the petition is transmitted to the District of Columbia Superior Court, the court must make an independent determination as to whether a duty of support is owed, and if so, "may order the defendant to pay such amounts under such terms and conditions as the Court may deem proper." D.C.Code § 30–315 (1988); *see also Rittenhouse v. Rittenhouse,* 461 A.2d 465, 466 (D.C.1983); *Harris v. Kinard,* 443 A.2d 25, 27–28 (D.C. 1982). The advantage of this procedure is that counsel is provided for the petitioning parent. *See* D.C.Code § 30–308 (1988).

---

District as early as October 23, 1974, when Edwards filed a URESA petition that was subsequently dismissed.

2. Since January 1, 1986, the support payments have been withheld from Lateef's salary.

3. Lateef also raised the defenses of res judicata and laches. The trial court did not reach these issues because it ruled on the URESA claim. Likewise, we do not reach them.

The Amendment Act altered the definition of a duty to support. Prior to the amendment, the duty to support did not include the duty to pay arrearages. D.C. Code § 30–302(5)(A) (1981). The duty to support now specifically encompasses the duty to pay arrearages. The revised definition includes:

> Any duty of support imposed by statute or by common law, or by any court order, decree, or judgment, whether interlocutory or final, whether incidental to a proceeding for divorce, judicial separation, separate maintenance, or otherwise, *and the duty to pay arrearages of support past due and unpaid.*

D.C.Code § 30–302(5)(A) (1988) (amendatory language emphasized). This provision became effective on February 24, 1987.

### III.

The availability of the URESA petition mechanism to collect arrearages that accrued prior to the amendment of URESA constitutes the dispute in this case and centers on whether the amendments to the statute should be applied prospectively or retroactively. The Superior Court, citing *Wolf, supra,* held that in the absence of a clearly expressed legislative intent to the contrary, statutory amendments are to be applied only prospectively and on that basis dismissed Edwards' petition.

■ The rule favoring the prospective application of legislation applies where substantive rights are affected by a change in legislation. As this court stated in *Mendes v. Johnson,* 389 A.2d 781, 789 n. 22 (D.C. 1978) (en banc), "statutes which amend settled law of substantive rights are to be applied prospectively only unless there is a clear expression of legislative intent to the contrary." *See also Bennett v. New Jersey,* 470 U.S. 632, 639–40, 105 S.Ct. 1555, 1560, 84 L.Ed.2d 572 (1985); *Greene v. United States,* 376 U.S. 149, 160, 84 S.Ct. 615, 621, 11 L.Ed.2d 576 (1964); *Union Pac. R.R. v. Laramie Stock Yards Co.,* 231 U.S. 190, 199, 34 S.Ct. 101, 102, 58 L.Ed. 179 (1913); *Wolf, supra,* 414 A.2d at 880 n. 8; *Peters v. District of Columbia,* 84 A.2d

115, 117 (D.C.1951); 2 Sutherland, Statutory Construction § 41.04 (Sands 4th ed. 1986); 82 C.J.S. *Statutes* § 415 (1953 & 1988 Supp.). That rule is inapplicable to this case.

■ It is a well-settled principle of statutory construction that "[c]ivil laws retroactively adding to the means of enforcing existing obligations are valid." 2 Sutherland, Statutory Construction § 41.09 (Sands 4th ed.1986). This rule applies as long as vested or substantive rights are not altered or created by the statutory amendment. *See, e.g., French v. Grove Mfg. Co.,* 656 F.2d 295, 298 (8th Cir.1981) (statute that set forth additional definitions, established a limitations period and enumerated defenses and indemnification remedies, could be applied retrospectively and created no new substantive rights or liabilities); *Samuelson v. Susen,* 576 F.2d 546, 551 (3d Cir.1978) (interpreting Ohio law that prohibition against retroactive legislation applies only to statutes affecting substantive rights and not to laws relating to remedy or procedure); *Montana Power Co. v. Federal Power Comm'n,* 144 U.S. App.D.C. 263, 271, 445 F.2d 739, 747 (1970) (en banc) (finding change of tribunal constitutes change in remedy that does not impair vested rights), *cert. denied,* 400 U.S. 1013, 91 S.Ct. 566, 27 L.Ed.2d 627 (1971); *Smith v. Sno Eagles Snowmobile Club, Inc.,* 625 F.Supp. 1579, 1581 (E.D.Wis.1986) (procedural or remedial statute will not apply where vested right is affected), *aff'd,* 823 F.2d 1193 (7th Cir.1987); *Grenier v. United States Internal Revenue Serv.,* 449 F.Supp. 834, 842 (D.Md.1978) (statutes which relate to remedies apply retrospectively unless vested right is destroyed); *Equal Employment Opportunity Comm'n v. Eagle Iron Works,* 367 F.Supp. 817, 820 (S.D. Iowa 1973) (rejecting argument that application of 1972 legislative enactment of Equal Employment Opportunity Act of 1972 to 1968 grievance is unconstitutional and finding that "if there exists a right, a subsequent legislative enactment creating a remedy for the deprivation of or interference with that right is constitutionally unobjectionable."). Thus, statutes that

create additional remedies,[4] relate to the modes of procedure [5] or confirm or clarify existing rights [6] do not contravene the general proscription against the retrospective operation of legislation. *See generally Federal Broadcasting Sys. v. Federal Communications Comm'n,* 99 U.S.App.D.C. 320, 323, 239 F.2d 941, 944 (1956) ("If the amendment is either procedural or remedial in character the settled rule permits its retroactive application"); 73 AM.JUR.2d *Statutes* § 354 (1974) (although contrary authority exists, generally "statutes relating to remedies or modes of procedure which do not create new or take away vested rights, but only operate in furtherance of the remedy or confirmation of such rights, do not normally come within the legal conception of a retrospective law, or the general rule against the retrospective operation of statutes"); 82 C.J.S. *Statutes* § 421 (1953) ("As a general rule statutes relating to remedies and procedure are given retrospective construction").

The statutory amendment at issue in this case did not affect or amend a substantive right. The amendatory language merely provided an additional remedy pursuable under the URESA petition mechanism to enforce an existing obligation. The characterization of URESA as remedial is consistent with this court's prior interpretations of URESA. *See Albus v. Albus,* 503 A.2d

4. *See, e.g., Chase Sec. Corp. v. Donaldson,* 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945) (amendment to lift bar of statute of limitations to restore remedy is proper); *French v. Grove Mfg. Co., supra,* 656 F.2d at 298 (statute creating indemnification procedure is remedial); *Montana Power Co., supra,* 144 U.S.App.D.C. at 271, 445 F.2d at 747 (change of tribunal constitutes change in remedy); *Grenier, supra,* 449 F.Supp. at 842 (finding amendment to Tax Reform Act of 1976 providing confidentiality and disclosure requirements remedial); *Gelinas v. Mackey,* 123 N.H. 690, 465 A.2d 498, 501 (1983) (statutory amendment awarding interest at higher rate is remedial). *See generally* 82 C.J.S. *Statutes* § 416 (1953 & 1988 Supp.).

5. *Mendes, supra,* 389 A.2d at 789 n. 22; *see, e.g., United Sec. Corp. v. Bruton,* 213 A.2d 892, 893–94 (D.C.1965) (statute relating solely to burden of proof and rules of evidence is procedural); *accord Yasuna v. Miller,* 399 A.2d 68, 72 n. 7 (D.C.1979) (interpreting amended UCC provision relating to production of documents as procedural); *Toomey v. Cammack,* 345 A.2d

1229, 1232 (D.C.1986) ("URESA remedies are supplementary"); *Schlecht, supra,* 387 A.2d at 577 ("Congress has deemed [URESA] a remedy for obtaining support and alimony wholly separate from and additional to any other remedies") (footnote omitted). Specifically, the amendment enlarged the former definition of a duty to support to include "the duty to pay arrearages of support past due and unpaid." D.C.Code § 30-302(5)(A) (1988).

"A remedial statute that does not take away vested rights can operate retroactively in the absence of language manifesting a contrary intent." 2 SUTHERLAND, STATUTORY CONSTRUCTION § 41.04 (Sands 4th ed.1986). The legislature did not manifest an intent to limit arrearages to only those accrued after February 24, 1987. Rather, all indications evidence a legislative intent to expand the remedies available to collect child support payments. The articulated purpose in enacting the amendments was "to establish an improved procedure for the establishment and collection of debts due and owing for the support of minor children." Committee Report, *supra,* at 2. The Committee emphasized the need for the amended legislation and noted that the "nonpayment of child support by absent parents has reached crisis proportions." *Id.*[7] The report concluded that the amend-

453, 454 n. 2 (D.C.1975) (same); *see also Samuelson, supra,* 576 F.2d at 552 (amended Ohio statute relating to admission of privileged health care information is procedural); *Bowles v. Strickland,* 151 F.2d 419, 420 (5th Cir.1945) (holding that amendment which related only to "procedural machinery" to enforce rights, could be applied to pending as well as future suits); 2 SUTHERLAND, STATUTORY CONSTRUCTION § 41.09 (Sands 4th ed.1986).

6. *See, e.g., Wilson v. Firemen's Fund Ins. Co.,* 40 Conn.Supp. 336, 499 A.2d 81, 83–84 (1985) (application of statutory enactment that construes or clarifies existing rights will not violate rule favoring prospective application of statutes); *Wayland Health Center v. Lowe,* 475 A.2d 1037, 1041 (R.I.1984) (where statutory amendment merely altered mechanism to determine earning capacity of unemployed and partially disabled workers and substantive rights are not affected, statute is remedial in nature).

7. The Committee reported further that: Nationally, over 50% of court ordered child support payments are in arrears, with over

ments, however "harsh," were dictated by the need to develop strong and effective methods for the enforcement of child support. *Id.*

There is scant legislative history on the URESA arrearages amendment. In reference to that provision, as the trial court specifically noted, the Chairperson of the Judiciary Committee stated: "currently, in URESA cases, District courts may award support only starting from the date the case was filed in the District. This amendment will allow the courts to enforce arrearages in out-of-state child support cases based on orders from another jurisdiction." *Edwards, supra,* 116 Daily Wash.L.Rptr. at 72. This language does not evince an intent on the part of the legislature to limit the recovery of arrearages prospectively. Taken in the context of the rest of the legislative history surrounding the Amendment Act, a contrary conclusion would seem appropriate.

■ In summary, Edwards obtained a money judgment in the sum of $8,560.00 and a subsequent certification of additional arrearages in the sum of $960.00 from the Ohio court that entitled her to collect $9,520 in child support from Lateef. Other methods were available for Edwards to enforce her judgment such as bringing a civil suit in the District of Columbia on the Ohio judgment.[8] She chose, however, to initiate a petition through the mechanism provided in URESA. Lateef's obligation to pay Edwards the $9,520 determined to be due

under the divorce judgment rendered in Ohio is not affected by this application of the statute; he owes this amount no matter which method Edwards invokes to collect it. Prior to the Amendment Act, URESA could not be used to collect arrearages accrued prior to the filing of an URESA petition, a rule established in *Schlecht v. Schlecht, supra.* The Amendment Act effectively overruled that portion of *Schlecht* and merely provided another remedy through which the obligee could enforce an existing duty to pay arrearages in child support against the obligor.[9]

*Reversed and remanded.*

---

25% receiving no payment at all. The District of Columbia Department of Human Services reports that 60 to 70% of all child support payments in the District of Columbia are in arrears with as many as 50% of the absent parents paying nothing.
Commission Report, *supra,* at 2.

8. The District of Columbia has long recognized that a money judgment is a way to collect on foreign divorce decrees. *See Smith v. Smith,* 109 U.S.App.D.C. 367, 370, 288 F.2d 151, 159 (1961); *Thomason v. Thomason,* 107 U.S.App. D.C. 27, 29, 274 F.2d 89, 90–91 (1959); *Varone v. Varone,* 296 A.2d 174, 177 (D.C.1972); *Howze v. Howze,* 225 A.2d 477, 478–79 (D.C.1967); *cf. Garvey v. Garvey,* 445 A.2d 650 (D.C.1982) (foreign judgment that violates requirement of personal jurisdiction over defendant will be ineffective for validity of child support order). Sim-

ilarly, Ohio, the jurisdiction that issued the final decision in this case, has also long recognized the nonmodifiable nature of past due and unpaid support installments. *McPherson v. McPherson,* 153 Ohio St. 82, 90 N.E.2d 675 (1950).

9. We likewise reject Lateef's contention that D.C.Code § 30–315 requires that where the URESA action is based on a foreign judgment, the Superior Court must make an independent judgment as to what amount it deems proper to order paid by the defendant. To read § 30–315 as applicable in this fashion to actions under URESA to enforce a foreign judgment for arrears would substantially nullify the 1987 amendment, as well as raise a serious constitutional issue under the Full Faith and Credit Clause of the United States Constitution.