**Annie A. MONTGOMERY, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

No. 89–109.

District of Columbia Court of Appeals.

Submitted Jan. 22, 1991.
Decided Oct. 17, 1991.

William R. Hyde, Jr., Washington, D.C., was on the brief for appellant.

Edward E. Schwab, Asst. Corp. Counsel, with whom Herbert O. Reid, Sr., Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief for appellee.

Before STEADMAN and SCHWELB, Associate Judges, and PRYOR, Senior Judge.

SCHWELB, Associate Judge:

This controversy has been around a while—more than fourteen years, to be exact—but the journey still may be far from over. Administrative law can be procedurally baffling, and it often takes a long time before the court is able to reach the merits of the controversy. This is such a case. Although we are reluctant to add another procedural hurdle to its resolution, we are constrained by the applicable statute, shades of Jarndyce v. Jarndyce [1] notwithstanding, to do just that.

## I

In September 1977, appellant Annie Montgomery was terminated from her employment as an assistant principal with the District of Columbia Public Schools. Seeking reinstatement and back pay, she invoked the grievance and arbitration procedures of the collective bargaining agreement between the Board of Education (the

Board) and the union of which Ms. Montgomery was a member. The Board ruled against Ms. Montgomery.

On February 14, 1980, Ms. Montgomery filed an action in the Superior Court challenging her dismissal. She contended that the Board had discharged her without a written recommendation by the Superintendent, in violation of D.C.Code § 31–102 (1973).[2] The gravamen of her claim was that her termination had been procedurally defective. Agreeing with Ms. Montgomery, Judge Belson, then a judge of the Superior Court, ordered the District of Columbia to reinstate her and to award back pay.

On the District's appeal, this court agreed that the Board had failed to comply with § 31–102, but held that reinstatement and back pay were premature where only procedural error had occurred. *District of Columbia v. Montgomery*, 453 A.2d 808 (D.C.1982) (per curiam) [*Montgomery I*]. The rationale for our holding was that "discharged public employees are not entitled to back pay and reinstatement if they would have been discharged even if they had been accorded procedural due process." *District of Columbia v. Gray*, 452 A.2d 962, 965 (D.C.1982).[3] Concluding that a "renewed proceeding before the Board ... [would] enable the required procedure of dismissal to be followed," *Montgomery I, supra*, 453 A.2d at 808, we remanded the case to the trial court with directions to "remand in turn ... to the Superintendent of Schools and the Board of Education for compliance with D.C.Code 1973 § 31–102." *Id.* at 808–09. This court also directed the Superior Court to retain jurisdiction for any further hearing which it might deem appropriate. *Id.* at 809. On December 15, 1983, in compliance with this court's mandate, the Superior Court remanded the case to the Superintendent and the Board for further proceedings.

1. The interminable lawsuit in Charles Dickens' *Bleak House.*

2. This statute provided that "No ... dismissal of any ... teacher ... shall be made by the Board of Education, except upon the written recommendation of the superintendent of schools." It is no longer in effect today.

3. In both *Gray* and *Montgomery I,* this court relied primarily on the Supreme Court's decision in *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978).

Following protracted discussions regarding the scheduling of a hearing date, Ms. Montgomery asked the trial court to hold the District in civil contempt for failure to comply with the order of December 15, 1983.[4] She alleged that the District had improperly failed to schedule a hearing as directed by the court. Ms. Montgomery also requested an order reinstating her to her position pending completion of the proceedings on remand. On September 23, 1985, Judge Weisberg declined Ms. Montgomery's request to hold the District in contempt, finding that the District had offered a reasonable explanation for the delay in initiating a hearing. He also denied Ms. Montgomery's request for reinstatement *pendente lite*, reasoning that this court's decision in *Montgomery I* precluded him from granting such relief. Judge Weisberg did, however, order that any renewed termination proceedings be instituted on or before October 15, 1985.

On October 11, 1985, the Superintendent instituted such proceedings against Ms. Montgomery, who was served on that date with a notice of proposed adverse action. A hearing was scheduled for December 19, 1985. At the request of Ms. Montgomery's attorney, the hearing was rescheduled for January 1986. The hearing examiner was forced to withdraw on account of scheduling problems, however, and the hearing was set for April 28, 1986.

In the meantime, Ms. Montgomery filed a second motion requesting the court to hold the District in civil contempt of the Superior Court's original order on remand. She maintained that proper procedures were still not being followed and that she was entitled to reinstatement, in accordance with Rule 3.7 of the Board of Education Adverse Action Rules,[5] pending a final administrative determination. On February 23, 1986, Judge Graae denied Ms. Montgomery's motion and ruled that reinstatement was foreclosed by *Montgomery I* and *Gray*. Judge Graae found it to be "clear that [Ms. Montgomery] is not entitled to ... reinstatement unless the termination proceeding that's now pending, through that proceeding, it is found that, in fact, she was improperly terminated." Judge Graae also held that this court's decision in *Gray* took precedence over the Board's internal rules of procedure.

Ms. Montgomery's case finally came on for a hearing before a Board of Education hearing examiner in late April 1986. On May 20, 1986, the hearing examiner issued his findings and recommended that Ms. Montgomery's termination be sustained. On June 6, 1986, Ms. Montgomery filed exceptions to the examiner's report and challenged the adequacy of the findings. Specifically, she claimed that the examiner's conclusions were without "foundation or support." The Board apparently agreed with Ms. Montgomery's contention that the report did not contain adequate findings and, on June 23, 1986, remanded the record to the examiner with instructions to prepare a new and more detailed report.[6] On January 12, 1987, the hearing examiner

---

**4.** George Margolies, counsel for the Superintendent of Schools, claimed that the delay in scheduling a hearing was caused by Ms. Montgomery's lack of legal representation. Mr. Margolies stated that he had received several telephone calls from various attorneys who told him that they were considering taking Ms. Montgomery's case. Mr. Margolies advised the Superintendent not to initiate proceedings until Ms. Montgomery had retained counsel.

**5.** Rule 3.7, entitled "Duty Status During the Notice Period," provides:

An employee against whom adverse action is proposed shall be retained in active duty status during the notice period or until final action is taken pursuant to this Chapter, whichever is longer, except in the following instances:

(a) When it is determined ... that retention of the employee in active duty status may ... be detrimental to the efficiency and discipline of the school system ... the employee may be temporarily assigned to other duties where such conditions are not likely to exist or he may be placed on leave with pay.

(b) The Board Committee may suspend the employee during the pendency of the period required by this Section; however, such suspension shall be considered a separate adverse action and shall be subject to the provisions of this Chapter regarding such action.

**6.** Ms. Montgomery challenges this action by the Board on the ground that the Board lacked jurisdiction to remand a case to the hearing examiner to issue more complete findings in support of the examiner's conclusions and recommendation. She contends that the Board

issued a revised report which contained additional findings of fact, and in which he adhered to his original conclusion on the merits. On February 10, 1987, the Board sustained the hearing examiner's revised findings and ordered Ms. Montgomery's termination for cause.

Ms. Montgomery did not appeal from the Board's order or from either of the trial court orders denying her reinstatement during the pendency of the review process. Indeed, Ms. Montgomery took no action whatever in the District of Columbia courts for a twenty month period following the Board's decision.[7] On October 4, 1988, however, she filed a petition for a writ of mandamus in the Superior Court challenging the Board's actions on remand. Although she did not specifically address the Board's determination of the merits of her termination, she alleged numerous procedural improprieties on the part of the Board during the proceedings on remand. The Board moved to dismiss the petition. At a hearing on this motion before Judge Mitchell, Ms. Montgomery's main contention was that the Board had violated its internal rules by not placing her on active duty status pending the outcome of the remand proceedings. Judge Mitchell denied Ms. Montgomery's petition, without additional elaboration, "as barred by the doctrine of *res judicata.*" This appeal followed.

## II

In 1979, the Council enacted the Comprehensive Merit Personnel Act (CMPA) D.C. Law 2–139, now codified as D.C.Code § 1–601.1, *et seq.* (1987). Section 1601(c) of the CMPA, D.C.Code § 1–617.-1(c), provides that

> [t]he Office of Employee Appeals [OEA] shall be the final administrative authority with respect to adverse action appeals by all District employees, subject to judicial review.

The OEA was established by § 1–606.1, *et seq.*, which became effective on December 3, 1980. *See* D.C.Code § 1–637.1(i); 27 D.C.Reg. 4349–4370 (Oct. 3, 1980); 27 D.C.Reg. 5449 (Dec. 12, 1980). By February 10, 1987, when the Board issued the decision which Ms. Montgomery now seeks to overturn, the OEA had been in operation for more than six years. Ms. Montgomery did not, however, seek review of the Board's order by the OEA.

On January 24, 1991, this court, acting *sua sponte*, issued an order directing the parties to address the question whether the Superior Court had authority to decide the case in light of Ms. Montgomery's failure to seek OEA review. Ms. Montgomery filed a response in which she took the position that OEA review was in fact required. The District, however, contends *inter alia*[8] that the CMPA is inapplicable because Ms. Montgomery was terminated in 1977, more than three years before OEA review was available, and because, according to the District, the OEA has "consistently construed D.C.Code § 1–637.1 as limiting its

---

violated its internal rules, which require it to render a final decision within fourteen days of the receipt of the exceptions to the hearing examiner's findings. In light of our disposition of the present appeal, we do not reach this issue.

**7.** In the latter part of 1986, Ms. Montgomery filed an action against the Board in the United States District Court, contending, among other things, that her constitutional rights had been violated. On April 25, 1988, Judge Penn of that court dismissed her federal action on the ground that she failed to state a claim for which relief could be granted.

**8.** The District also maintains that in *Montgomery I,* this court ordered the Superior Court to

retain jurisdiction over future proceedings regarding Ms. Montgomery's case, and thus "contemplated that review of Board proceedings on remand would be by the court rather than by OEA." We disagree with this analysis.

In *Montgomery I,* this court directed that "the Superior Court upon remand shall retain jurisdiction for any further hearing it deems appropriate." 453 A.2d at 808. We neither addressed nor contemplated the issue whether review by the OEA was required. At most, the question "merely lurk[ed] in the record" and was not argued to or decided or discussed by the court. *See Webster v. Fall,* 266 U.S. 507, 511, 45 S.Ct. 148, 149, 69 L.Ed. 411 (1925). *Montgomery I* does not foreclose a holding that Ms. Montgomery must exhaust her administrative remedies before seeking review in the Superior Court.

jurisdiction to cases in which personnel actions were initiated on or after December 4, 1980." The District's argument is predicated on the apparent assumption that the question whether Ms. Montgomery's appeal from a 1987 decision is to the OEA or to the court turns on the date of her underlying dismissal. This is not necessarily so.

In the present case, the order of the Board of which Ms. Montgomery seeks review was entered in 1987, seven years after the effective date of the CMPA. The proceedings before the hearing examiner at which errors are alleged to have been made took place in 1986. The notice of proposed adverse action which brought the controversy before the hearing examiner was served on Ms. Montgomery in 1985. We think it questionable whether review of the Board's order in such a case should be governed by procedures which were abolished by statute many years ago.

■ The enactment of the CMPA,[9] and the creation in the new Act of the OEA, effected a change in the tribunal which would in the first instance consider the legality of a challenged adverse action. A statute providing for a different tribunal is deemed procedural in nature, for it merely alters the remedy and does not impair vested rights. *Edwards v. Lateef,* 558 A.2d 1144, 1146 (D.C.1989) (citing *Montana Power Co. v. Federal Power Comm'n,* 144 U.S.App.D.C. 263, 271, 445 F.2d 739, 747 (1970) (en banc), *cert. denied,* 400 U.S. 1013, 91 S.Ct. 566, 27 L.Ed.2d 627 (1971)).

■ "Unless a contrary legislative intent appears, changes in statute law which pertain only to procedure are generally held to apply to pending cases." 2 N. Singer, Sutherland Statutory Construc-

TION § 41.09, at 396 (4th rev. ed. 1986); *Sikora v. American Can Co.,* 622 F.2d 1116, 1119 (3d Cir.1980). This is true although the transaction which precipitated the dispute took place prior to the enactment of the statute. *Yasuna v. Miller,* 399 A.2d 68, 72 n. 7 (D.C.1979), *United Sec. Corp. v. Bruton,* 213 A.2d 892, 893–94 (D.C.1965). "[S]tatutes which relate to remedies apply retrospectively [10] unless [a] vested right is destroyed." *Edwards, supra,* 558 A.2d at 1146 (citation omitted). As Chief Judge Andrews concisely put it for the New York Court of Appeals almost a century ago in *Lazarus v. Metropolitan Ry. Co.,* 145 N.Y. 581, 585, 40 N.E. 240, 241 (1895), "by the general rule of law, the procedure in an action is governed by the law regulating it at the time any question of procedure arises." This must be the correct rule "[u]nless procedure is to be involved in chaos." *People ex rel Central New England Ry. Co. v. State Tax Comm'n,* 261 App.Div. 416, 418–19, 26 N.Y.S.2d 425, 426 (3d Dept.1941).[11] In the present case, the law regulating review of adverse actions at the time review was sought was the CMPA, which ordains the OEA as the proper tribunal to which the initial appeal must be made.

The question arises whether the statute itself precludes application of the CMPA to this case. The Act provides that "[a]n appeal from decisions effected under §§ 1–617.1 and 1–617.2 may be made to the Office of Employee Appeals." D.C.Code § 1–617.3(b) (1987). Section 1–617.1 deals with adverse actions; section 1–617.2 deals with grievances. Both were enacted as part of the CMPA. Arguably, since Ms. Montgomery was dismissed and complained about her dismissal prior to the effective

---

**9.** The CMPA was enacted to replace a personnel system "in disarray and chaos." *District of Columbia v. Thompson,* 593 A.2d 621, 632 (D.C.1991). It is a remedial statute and must be accorded a generous construction. *See Riggs Nat'l Bank v. District of Columbia,* 581 A.2d 1229, 1234, 1262 (D.C.1990).

**10.** "[Changes in the form of remedies] are retrospective if viewed in relation to the wrongs. They are prospective if viewed in relation to the means of reparation." *Berkovitz v. Arbib &*

*Houlberg,* 230 N.Y. 261, 270, 130 N.E. 288, 290 (1921) (Cardozo, J.).

**11.** As Judge Learned Hand stated for the court in *Untersinger v. United States,* 181 F.2d 953, 955–56 (2d Cir.1950), "while procedural statutes do apply to pending litigation, they have no retroactive effect upon any steps that may have been taken in the action before they are passed." (Footnotes omitted.) In the present case, however, the procedural "steps" in question were taken long after the effective date of the CMPA.

date of the CMPA, the decisions appealed from were not "effected under" these provisions. The orders of which she complains, however, were entered many years later, and it is not self-evident that the Act is inapplicable to the situation here presented, even though the merits of the dismissal would be decided under pre-CMPA substantive law.

The District contends that the OEA has itself construed the CMPA as conferring jurisdiction upon it only in cases in which personnel actions were instituted on or after December 4, 1980. *See, e.g., Employee v. Agency,* No. OEA–1601–0140–81, 30 D.C.Reg. 588 (Oct. 25, 1982); *Employee v. Agency,* No. OEA–1602–0139–81, 30 D.C.Reg. 1634 (March 3, 1983).[12] Even under its own approach, however, the OEA should arguably exercise jurisdiction in the present case. The Office stated in its October 25, 1982 decision cited above that

> Employee was notified of the proposed adverse action by letter dated November 12, 1980. Since the action of the agency was commenced prior to December 3, 1980, the Office of Employee Appeals ... has no jurisdiction over this action.

30 D.C.Reg. at 588. Here, the notice of proposed adverse action was served on Ms. Montgomery long after the effective date of the Act. Although that notice stated, in accordance with *Montgomery I,* that the Board proposed to proceed in conformity with D.C.Code § 31–102 (1973), since repealed, we do not think that this direction, which deals with the applicable substantive law as to what steps are required in order to discharge an employee, is dispositive of

the *prospective* procedural question of the proper tribunal to which an appeal from the Board's order must be taken.[13]

In sum, we are of the opinion that, at least arguably, Ms. Montgomery was obliged to seek review of the Board's order by the OEA rather than by the Superior Court. Ms. Montgomery herself has now taken the position that OEA review is required. We conclude that the OEA should at least be accorded the opportunity to exercise jurisdiction in this case.

### III

Ms. Montgomery did not seek review by the OEA. If such review is required, then she failed to exhaust her administrative remedies. One might think that this would end the matter, but it may not.

■ Section 336.4(e) of the CMPA, D.C.Code § 1–606.4(e) (1987), provides as follows:

> Each agency shall advise each employee against whom action is taken adversely affecting the employee of his or her right to appeal to the Office as provided in this subchapter.

Where the required procedure is not followed, "the proper course is to remand [this case] for review by the OEA without any prejudice for the earlier failure to appeal to that Office." *District of Columbia v. Daniels,* 523 A.2d 569, 571 (D.C.1987) (per curiam). Accordingly, if OEA had jurisdiction, there may have been no waiver by Ms. Montgomery of her rights.

---

**12.** In the March 3, 1983 decision cited above, the OEA relied heavily on *Kyle v. Interstate Commerce Comm'n,* 197 U.S.App.D.C. 285, 609 F.2d 540 (1980), in which the court sustained a ruling by the federal Merit Systems Protection Board to the effect that where an employee received notice of a proposed personnel action before the effective date of the Civil Service Reform Act (CSRA), his appeal was governed, both at the administrative and judicial levels, by the procedures which existed before the Act was passed. The CSRA, however, contained a savings clause which stated that "[n]o provision of this Act shall affect any administrative proceedings pending at the time such provision takes effect." The CMPA contains no comparable

provision, and the *Kyle* case has no bearing on the issue.

**13.** The arguable unreasonableness of permitting direct review by the Superior Court more than a decade after the CMPA went into effect is further illustrated by what one might describe as a "converse hypothetical." Suppose that review by the OEA had been required under prior law, and that the legislature, concluding that such a procedure was too time-consuming, abolished the Office and authorized immediate judicial review. It would surely be incongruous under such a hypothetical scenario to reincarnate a defunct agency for the purpose of accomplishing review under an obsolete and legislatively repudiated procedure.

For the foregoing reasons, the case is remanded to the Superior Court to enter an order further remanding to the OEA with directions to that agency to determine whether it has jurisdiction over Ms. Montgomery's petition for review, both substantively and with respect to timeliness of filing.

*So ordered.*